IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MELISSA A. MITCHELL,         )
                          )
        Plaintiff        )      CASE NO. 8:03-CV-1598-T23-EAJ
                          )
v.                        )
                          )
12-2000 L.L.C. d/b/a      )
BUCHANAN JENKINS HYUNDAI    )
OF BRADENTION,        )
                          )
        Defendant      )
_____)

# AMENDED COMPLAINT

Plaintiff, MELISSA A. MITCHELL (hereinafter "Mitchell") sues Defendant, 12-2000 L.L.C. d/b/a BUCHANAN JENKINS HYUNDAI (hereinafter "Buchanan Jenkins") for common law and statutory violations in connection with the purchase of an automobile and in support thereof alleges:

## JURISDICTION AND PARTIES

1.      This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1640 and 28 U.S.C. § 1331, and supplemental jurisdiction of the state law claims regarding the same transactions and events under 28 U.S.C § 1367.

2.      Plaintiff MITCHELL is a natural person residing in Manatee County, Florida.

3.      Defendant BUCHANAN JENKINS is a Florida corporation engaging in business in Manatee County, Florida.

## FACTS COMMON TO ALL COUNTS

4.      On or around July 5, 2003, MITCHELL filled out an Internet application for credit in connection with the purchase of a car for personal use.



5.     That same day, Roger Riffle ("Riffle"), employee of the Defendant, BUCHANAN JENKINS, called MITCHELL to get MITCHELL's credit information over the telephone after explaining that he could not access the online application.

6.     Riffle called MITCHELL back approximately 30 minutes later and stated something to the effect of, "We've got something for you.  It would be a 2003 Hyundai Accent, 2 door."

7.     Riffle told MITCHELL to come to the BUCHANAN JENKINS dealership, bringing with her her pay stubs, phone bill, another utility bill, insurance, six references, and $3,000.00 for a down payment.

8.     MITCHELL went to the BUCHANAN JENKINS dealership and test drove the car, a 2003 Hyundai Accent, 2 door, VIN no. KMHCF35C23U265981 (hereinafter "the car").

9.     MITCHELL understood that Riffle was submitting her credit information to the finance manager while she test drove the car.

10.     Upon her return from the test drive, MITCHELL asked Riffle whether she would get financed, to which Riffle responded, "You wouldn't be here if we couldn't".

11.     Ray Buril (hereinafter "Buril"), a sales manager, approached MITCHELL and told her he wanted to sell her a car today, stating, "What do I need to do to get you to buy this car today?".

12.     MITCHELL responded that she and BUCHANAN JENKINS needed to agree on a price.

13.     Buril and MITCHELL agreed on a price, after which, Buril called out to Riffle to prep the car, take care of the title, plate, and insurance because MITCHELL had just bought the car.

14.     MICHELL sat with the finance manager signed the Buyer's Order, the Retail Installment Sales Contract (hereinafter "RISC"), and several half-page legal forms dealing with Odometer disclosures and pollution devices.  True copies of these forms are attached hereto as Exhibits A, B, and C, respectively.

15.     MITCHELL tendered her partial down payment of $1265.00.

16.     The finance manager thanked MITCHELL for doing business with BUCHANAN JENKINS and stated that he hoped MITCHELL would enjoy her new car.

2

17.     Riffle then stated that before MITCHELL left the dealership with the car, she had to buy full insurance coverage.

18.     Riffle arranged for an insurance salesman to come to the dealership to write a policy for MITCHELL.

19.     After speaking with the insurance salesman, MITCHELL declined the insurance salesman's policy due to cost and told Riffle that she would get a policy the following Monday.

20.     Riffle stated that he wanted to see what he could do to get MITCHELL to take her car that day, so Riffle called Progressive Insurance.

21.     MITCHELL received a quote from Progressive and again declined due to cost, again telling Riffle that she would wait until Monday to shop around.

22.     Riffle suggested that she shop online and set her up on a computer at the dealership to look for insurance companies.

23.     Riffle also stated that he would see whether he could get part of MITCHELL's down payment back so MITCHELL could apply that toward insurance.

24.     MITCHELL received an agreeable quote from Esurance and began to complete the application for same.  The application asked for the name of the finance company financing her purchase of the car.

25.     MITCHELL asked Riffle which financing company was financing her car, and Riffle asked the finance manager, who replied with the name and address: Regional Acceptance, 33859 U.S. HWY 19 N., Palm Harbor, FL 34684.

26.     MITTCHELL purchased the Esurance policy.

27.     Riffle told MITCHELL to return to the dealership Monday to pick up $275.00 back from her down payment for her insurance.

28.     MITCHELL completed an Application for a Temporary Tag, a copy of which is attached hereto as Exhibit D.

29.     The finance manager told MITCHELL that her real plate would come in the mail.

30.     As MITCHELL began to leave the dealership, Buril, Riffle, and the finance manager congratulated MITCHELL on her new car, told her to enjoy the new car, and that they were glad to have sold her a car that day.

3

31.     MITCHELL tinted the windows of the Hyundai Accent, and began using the car extensively.

32.     On July 7, 2003, MITCHELL retrieved the $275.00 back from her down payment to BUCHANAN JENKINS for the insurance she purchased online.

33.     On July 7, 2003, BUCHANAN JENKINS caused five (5) auto financing companies to check MITCHELL's credit.

34.     On July 8, 2003, BUCHANAN JENKINS caused a pre-approved electronic withdrawal in the amount of $1,460.00 from MITCHELL's bank account, representing the balance for MITCHELL's down payment.

35.     On July 11, 2003, an employee from BUCHANAN JENKINS called MITCHELL and demanded the return of the car.

36.     When MITCHELL referred to her contract, the BUCHANAN JENKINS employee stated that the contract had not been formed.

37.     MITCHELL checked her paperwork from BUCHANAN JENKINS and found that the contract was, on its face, formed and final, and declined to return the car.

38.     On a subsequent telephone call, the BUCHANAN JENKINS employee threatened MITCHELL with repossession and that he would maximize all fees upon the car's return, thereby leaving her not only with no refund of her down payment but also with additional costs to pay for the temporary use of the car.

39.     At a hearing on MITCHELL's motion for Temporary Injunctive Relief, filed in the Circuit Court for Manatee County, MITCHELL received, for the first time, a copy of the Bailment Agreement, a copy of which is attached hereto as Exhibit E. (MITCHELL's Complaint in the Circuit Court was dismissed voluntarily by Mitchell on August 1, 2003.)

40.     MITCHELL continued to attempt to tender her car payments to BUCHANAN JENKINS in accordance with the Retail Installment Sales Contract ("RISC").

41.     MITCHELL has received no title to the car, and the car's temporary tags from BUCHANAN JENKINS have expired.

42.     Consequently, MITCHELL has no use or ownership of the car she purchased from BUCHANAN JENKINS.

**COUNT ONE:      VIOLATION OF THE EQUAL CREDIT
OPPORTUNITY ACT, 15 U.S.C. §1691 AND THE REGULATIONS
PROMULGATED THEREUNDER.**

43.      MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as
if fully set forth herein.

44. Based upon the execution of the RISC, BUCHANAN JENKINS effectively
granted credit to MITCHELL, but withdrew the approval for credit sometime before July
11, 2003.

45.  In the alternative, BUCHANAN JENKINS obtained MITCHELL's credit
report and declined to extend credit to MITCHELL.

46. BUCHANAN JENKINS's denial of credit to MITCHELL constituted adverse
action for purposes of the Equal Credit Opportunity Act, 15 U.S.C.
§ 1691 *et seq.*

47. BUCHANAN JENKINS 's approval was false and therefore in violation of
the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*

48. BUCHANAN JENKINS failed to provide MITCHELL with proper written
notice that BUCHANAN JENKINS had taken adverse action against her in violation of
the Equal Credit Opportunity Act, 15 U.S.C. § 1691 (d)(2)(b) and 12 C.F.R. § 202.9

49. Upon information and belief, BUCHANAN JENKINS has inadequate policies
or procedures in place to comply with the ECOA's adverse action notice and record-
keeping requirements.

50. MITCHELL has suffered damages by reason of these violations of the Equal
Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*

WHEREFORE, Plaintiff respectfully prays that this Court:

A.      award statutory damages under the Equal Credit Opportunity Act, 15 U.S.C. §
1691e(b);

B.      award Plaintiff's costs and reasonable attorney's fees in accordance with the
Equal Credit Opportunity Act, 15 U.S.C. § 1691e(c) and (d); and

C.      award such other relief as the Court deems appropriate.

**COUNT TWO:      VIOLATION OF THE TRUTH IN LENDING ACT, 15
U.S.C. 1638 AND THE REGULATIONS PROMULGATED THEREUNDER
AS TO THE RETAIL INSTALLMENT SALES CONTRACT.**

51.     MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as
if fully set forth herein.

52.     The transaction between MITCHELL and BUCHANAN JENKINS was a
credit sale as defined under the Truth in Lending Act ("TILA").

53.     BUCHANAN JENKINS is a creditor as defined by TILA.

54.     MITCHELL is a consumer as defined by TILA.

55.     By pending the sale of the conditions stated in the Bailment Agreement,
BUCHANAN JENKINS violated 12 C.F.R. §226.18 by failing to make the following
accurate disclosures before MITCHELL signed the Retail Installment Sales Contract
("RISC"):

> a. the name of the creditor in violation of 15 U.S.C. § 1638(a)(1), and
> Regulation Z, 12 C.F.R. §226.18(a) and 226.4;
>
> b. by failing to disclose accurately the "finance charge," in
> violation of 15 U.S.C. § 1638(a)(3), and Regulation Z, 12 C.F.R. §
> 226.18(d) and 226.4;
>
> b. by failing to disclose accurately the "amount financed" in
> violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, 12 C.F.R. §
> 226.18(b); and
>
> c. by failing to disclose accurately the "annual percentage rate," in
> violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, 12 C.F.R. §
> 226.18(e).

56.     In the alternative, the BUCHANAN JENKINS violated TILA and
Regulation Z § 226.17(c)(2) by failing to mark the financing terms on the TILA
disclosures on the RISC as estimates inasmuch as the loan's starting date had not yet
been determined.

57.     As a consequence, MITCHELL, in violation of TILA, did not know the
true cost of the purchase transaction.

58.    MITCHELL's damages include, but are not limited to, the cost of tinting the car's windows, the obligation and payment of interest accruing since the date the RISC was signed, the payment for insurance for a car she may have not owned when she purchased the insurance, the down payment for a car that she cannot use and does not own, the cost of arranging for alternative transportation because she cannot use her new car.

WHEREFORE, Plaintiff respectfully prays that this Court find the following:

A.    that the RISC was final and enforce the RISC according to the terms disclosed under TILA, and find a violation in the start date of the loan and the absence of any reference to "estimates", and award Plaintiff the following:

   i.    ownership and use of the car;

   ii.    statutory damages under the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(A)(i) or actual damages, whichever is greater;

   iii.    Plaintiff's costs and reasonable attorney's fees; and

   iv.    such other relief as the Court deems appropriate.

B.    Or, in the alternative find that the RISC was subject to a condition precedent rendering the terms non-final and inaccurate and award the Plaintiff the following:

   i.    statutory damages under the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(A)(i) or actual damages, whichever is greater;

   ii.    Plaintiff's costs and reasonable attorney's fees in accordance with the Truth in Lending Act; and

   iii.    such other relief as the Court deems appropriate.

**COUNT THREE:    VIOLATION OF THE TRUTH IN LENDING ACT, 15 U.S.C. 1638 AND THE REGULATIONS PROMULGATED THEREUNDER AS TO THE BAILMENT AGREEMENT**

59.    MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as *if fully set* forth herein.

60.    BUCHANAN JENKINS is a creditor as defined by TILA.

7

61.     MITCHELL is a consumer as defined by TILA.

62.     The Bailment Agreement contains terms stating that the Bailment Agreement is part of the sales agreement.

63.     The Bailment Agreement imposes costs on MITCHELL for, among other things, the use of, wear and tear, and damage done to the car until financing is approved.

64.     By pending the sale of the conditions stated in the Bailment Agreement, BUCHANAN JENKINS violated 12 C.F.R. §226.17 by failing to make accurate disclosures about the cost of the Bailment Agreement before MITCHELL signed the "RISC".

65.     BUCHANAN JENKINS further violated 12 C.F.R. §226.17 by failing to mark any terms in the Bailment Agreement "estimates" before MITCHELL signed the "RISC".

66.     As a consequence, MITCHELL, in violation of TILA, did not know the true cost of the purchase transaction.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.     award statutory damages under the Truth in Lending Act, 15 U.S.C. § 1640(a)(2)(A)(i);

B.     award Plaintiff's costs and reasonable attorney's fees; and

C.     award such other relief as the Court deems appropriate.

### COUNT FOUR:     VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 AND THE REGULATIONS PROMULGATED THEREUNDER.

67.     MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as if fully set forth herein.

68.     Following application for credit by MITCHELL, BUCHANAN JENKINS accessed and used MITCHELL's consumer credit report for the purpose of determining eligibility for credit.

69.     Based upon a review of that consumer credit report, BUCHANAN JENKINS refused to extend the proposed credit to MITCHELL.

8

70.     BUCHANAN JENKINS's refusal to extend credit to MITCHELL constituted adverse action for purposes of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a(k).

71.     BUCHANAN JENKINS failed to issue the adverse action notice to MITCHELL which the FCRA, 15 U.S.C. § 1681m, requires of users of consumer credit reports who take adverse action.

72.     Upon information and belief, BUCHANAN JENKINS has no policies or procedures in place to comply with the FCRA's adverse action notice.

73.     This failure to issue an adverse action notice constituted a negligent violation of the FCRA, 15 U.S.C. § 1681o by BUCHANAN JENKINS.

74.     In the alternative, this failure to issue an adverse action notice constituted a willful violation of the FCRA, 15 U.S.C. § 1681n by BUCHANAN JENKINS

WHEREFORE, Plaintiff respectfully prays that this Court find either of the following:

A.     That Defendant's violation was wilful, and award the following:

    i.     statutory damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681n(1);

    ii.     punitive damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681n(2);

    ii.     award Plaintiff's costs and reasonable attorney's fees in accordance with the Fair Credit Reporting Act, 15 U.S.C. § 1681n(2); and

    iii.     award such other relief as the Court deems appropriate.

B.     Or, that Defendant's violation was negligent, and award the following:

    i.     actual damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681o(a);

    ii.     award Plaintiff's costs and reasonable attorney's fees in accordance with the Fair Credit Reporting Act,15 U.S.C. § 1681o(a); and

    iii.     award such other relief as the Court deems appropriate.

**COUNT FIVE:      BREACH OF CONTRACT**

75.     MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as if fully set forth herein.

76.     MITCHELL and BUCHANAN JENKINS entered into the RISC, agreeing that MITCHELL would buy the car under the terms of the RISC and BUCHANAN JENKINS would sell the car under the terms of the RISC.

77.     MITCHELL, in accordance with the RISC, tendered as consideration a $2,725.00 down payment and security interest in the car.

78.     BUCHANAN JENKINS agreed under the RISC to provide ownership and use of the car to MITCHELL and accept payments for the remainder of the balance due on the car.

79.     The RISC states that it contains "the entire agreement" between MITCHELL and BUCHANAN JENKINS.

80.     The RISC contains a merger clause that requires any modification to be in writing and signed by MITCHELL.

81.     There are no conditions stated in the RISC.

82.     In the alternative, any conditions that might have been conditions precedent had been met inasmuch as the RISC states that BUCHANAN JENKINS is the Creditor and that financing is obtained under the terms disclosed by the Truth in Lending Act.

83.     In the alternative, any conditions that might have been conditions precedent had been waived inasmuch as BUCHANAN JENKINS electronically withdraw from Plaintiff's bank the remaining balance on her down payment the day after her credit was rejected by five lending institutions.

84.     BUCHANAN JENKINS breached the RISC by demanding the return of the car from MITCHELL and refusing to accept further payments under the RISC.

85.     BUCHANAN JENKINS is in further breach of the RISC by failing to submit the proper paperwork to the state for title and tags for MITCHELL.

86.     MITCHELL has been damaged as a result.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.      award Plaintiff the ownership and use of the car, and require that the Defendant submit the proper paperwork to the state so Plaintiff can use the car; and

B.      award Plaintiff costs and fees;

C.      award such other relief as the Court deems appropriate.

## COUNT SIX: VIOLATION OF FLORIDA'S MOTOR VEHICLE SALES FINANCE ACT AS TO THE RETAIL INSTALLMENT SALES CONTRACT

87.     MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as if fully set forth herein.

88.     The RISC entered into by the parties to this suit is within the definition of a retail installment contract under Fla. Stat. § 520.02 (2003).

89.     By failing to sign the RISC, BUCHANAN JENKINS violated Fla. Stat. §520.07.

90.     BUCHANAN JENKINS further violated Fla. Stat. §520.07(1) by failing to complete all essential provisions.

91.     BUCHANAN JENKINS further violated Fla. Stat. §520.07 (2) by failing to disclose the accurate financing terms

92.      BUCHANAN JENKINS further violated Fla. Stat. §520.07 (3) by failing to provide separate written itemization of the amount financed.

93.     MITCHELL has been damaged as a result.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.      award Plaintiff the ownership and use of the car, and require that the Defendant submit the proper paperwork to the state so Plaintiff can use the car;

B.      award actual damages pursuant to Fla. Stat. §520.12 (2003); and

C.      award such other relief as the Court deems appropriate.

**COUNT SEVEN:    VIOLATION OF FLORIDA'S UNFAIR OR
DECEPTIVE TRADE OR PRACTICES ACT, Fla Stat. § 501.976 (2003).**

94.    MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as
if fully set forth herein.

95.    MITCHELL purchased a vehicle for personal use.

96.    By obtaining MITCHELL's signature on the RISC that BUCHANAN
JENKINS, through its employees, failed to complete fully or that did not accurately
reflect the negotiations and agreement between the parties, BUCHANAN JENKINS
violated 501.976(9).

97.    By signing an incomplete contract and one that did not reflect
MITCHELL's agreement with BUCHANAN JENKINS, MITCHELL has been damaged
as a result.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.    award Plaintiff the ownership and use of the car, and require that the Defendant
submit the proper paperwork to the state so Plaintiff can use the car;

B.    award Plaintiff's costs and reasonable attorney's fees in accordance with Florida's
Unfair or Deceptive Trade or Practices Act; and

C.    award such other relief as the Court deems appropriate.


**COUNT EIGHT:    NEGLIGENT MISREPRESENTATION WITH
RESPECT THE BAILMENT AGREEMENT**

98.    MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as
if fully set forth herein.

99.    As the seller of motor vehicles on credit, BUCHANAN JENKINS had a
duty, under federal and state laws to disclose accurately any information that would affect
the finality of the transaction.

100.   BUCHANAN JENKINS obtained MITCHELL's signature on the
Bailment Agreement by dismissing the Bailment Agreement as formalities required by
*state law* and, as such, submitted the Bailment Agreement along with the pollution device
form and odometer disclosure form for MITCHELL's signature

12

101.    By failing to disclose the condition precedent in the Bailment Agreement, BUCHANAN JENKINS breached its duty.

102.    Alternately, by failing to inform MITCHELL that the condition precedent in the Bailment agreement had not been met even though BUCHANAN JENKINS stated in the RISC that it was the Creditor and, alternately, that Regional Acceptance Corp. was the creditor, it misrepresented the terms of the sale.

103.    By giving MITCHELL temporary tags signifying that the sale was final, rather than dealer tags BUCHANAN JENKINS sought to conceal the fact that condition precedent had not yet been met.

104.    By requiring that MITCHELL obtain insurance before MITCHELL drove the car from the dealership as though the sale was final, rather than covering the car in its blanket policy, BUCHANAN JENKINS sought to conceal the fact that condition precedent had not yet been met.

105.    By failing to disclose the information to MITCHELL, BUCHANAN JENKINS breached its duty.

106.    Because of BUCHANAN JENKINS's failure to disclose the information that could affect the sale, MITCHELL was damaged.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.      award Plaintiff the ownership and use of the car, and require that the Defendant submit the proper paperwork to the state so Plaintiff can use the car;

B.      award Plaintiff's costs and reasonable attorney's fees; and

C.      award such other relief as the Court deems appropriate.


**COUNT NINE:        FRAUD IN THE INDUCEMENT/CONSTRUCTIVE FRAUD**

107.    MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as if fully set forth herein.

108.    BUCHANAN JENKINS, through employee Riffle, stated to MITCHELL while MITCHELL was at the dealership that MITCHELL could get financing for the car.

13

109.   BUCHANAN JENKINS, through its employee, Riffle, represented to MITCHELL that MITCHELL had obtained financing by listing BUCHANAN JENKINS as "Creditor" on the RISC.

110.   BUCHANAN JENKINS through its employees, Riffle and the finance manager, then represented to MITCHELL while MITCHELL attempted to obtain online insurance that her car was financed through Regional Acceptance, 33859 U.S. HWY 19 N., Palm Harbor, FL 34684.

111.   BUCHANAN JENKINS thus represented in writing and orally that MITCHELL had received approved financing of the car when it knew or should have known that financing had not yet been obtained.

112.   BUCHANAN JENKINS represented that MITCHELL had received approved financing in order to induce MITCHELL to sign the contract, obtain insurance, and drive the car away from the dealership believing the car to be owned by her in accordance with the RISC.

113.   MITCHELL did indeed sign the contract, obtain insurance, and drive the car away from the dealership believing the car to be owned by her in accordance with the RISC.

114.   Mitchell suffered damages in the form of signing a contract to which she was bound to make a down payment and installment payments, obtaining insurance on a car that was not hers and that she could not use, and believing the car to be hers, tinted the windows, all in reliance on BUCHANAN JENKINS's misrepresentations.

115.   In the alternative of a claim for actual fraud, the above misrepresentations were made innocently or negligently to allow for a claim of constructive fraud.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.   award Plaintiff the ownership and use of the car, and require that the Defendant submit the proper paperwork to the state so Plaintiff can use the car;

B.   award Plaintiff's costs and reasonable attorney's fees; and

C.   award such other relief as the Court deems appropriate.

**COUNT TEN:      VIOLATION OF THE CONSUMER LEASE ACT
AND REGULATIONS PROMULGATED THEREUNDER AS TO THE
BAILMENT AGREEMENT**

116.    MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as
if fully set forth herein.

117.    The Bailment Agreement is a lease as defined by the Consumer Lease Act,
15 U.S.C. 1667.

118.    By failing to make the meaningful disclosures required under Regulation
M, 12 C.F.R. § 213.3 and 213.4, BUCHANAN JENKINS violated the Consumer Lease
Act, 15 U.S.C. §1667a.

119.    As a consequence, MITCHELL, in violation of the Consumer Lease Act,
did not know the true cost of the purchase transaction.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.      award statutory damages under the the Consumer Lease Act, 15 U.S.C. §1667d
and 15 U.S.C. §1640;

B.      award Plaintiff's costs and reasonable attorney's fees; and

C.      award such other relief as the Court deems appropriate.


**COUNT ELEVEN:  VIOLATION OF FLORIDA'S CONSUMER
COLLECTION ACT**

120.    MITCHELL realleges, reiterates, and restates Paragraphs 1 through 42 as
if fully set forth herein.

121.    The transaction and contract concerned a consumer good.

122.    By using abrasive language, BUCHANAN JENKINS, through its
employee, violated Fla. Sta. §559.72(8).

123.    By threatening to maximize all fees personally, BUCHANAN JENKINS,
through its employee, violated Fla. Sta. §559.72(9)

124.    By threatening to repossession, BUCHANAN JENKINS, *through its*
employee, violated Fla. Sta. §559.72(9).

15

125.    As a consequence, MITCHELL suffered damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Court award her use and ownership of the car and the appropriate statutory, actual, and/or punitive damages and attorney's fees and costs, or, rescission with award of costs and the appropriate statutory, actual, and/or punitive damages and attorney's fees and costs.

## JURY DEMAND

Plaintiff demands a jury trial.

Respectfully submitted,

Melissa A. Mitchell, Plaintiff
117 Neptune Lane, Apt. E
Holmes Beach, FL
(941) 778-3743

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Amended Complaint has been transmitted via facsimile and by regular U.S. mail to William J. Denius, Esq., Killgore, Pearlman, Stamp, Ornstein & Squires, P.A., 2 South Orange Avenue, 5th Floor, Orlando, Florida 32801 (Fax: 407-839-3635) on this 22nd day of September, 2003.

Melissa A. Mitchell, Plaintiff

16

**BUCHANAN/JENKINS HYUNDAI**
2503 - 1st Street E. Bradenton, FL. 342-   41-747-9262

STOCK NO 8217   DEAL 6520   DATE 07/05/2003

PURCHASER MELISSA MITCHELL   DRIVER LICENSE NO   DATE OF BIRTH   SOC SECURITY NO

CO-PURCHASER   DRIVER LICENSE NO   DATE OF BIRTH   SOC SECURITY NO

ADDRESS 117 NEPTUNE LN #E   CITY HOLMES BCH   STATE   34217
262 ROGER D RIFFLE

HOME PHONE 778-3743   BUSINESS PHONE 798-6270   SALES PERSON

I (we) hereby order from you, subject to all items, conditions and agreements contained herein, and the
ADDITIONAL CONDITIONS printed on the reverse side hereof, the following:

☐ NEW ☐ USED ☐ DEMO | ☐ CAR ☐ TRUCK ☐ OTHER | MVI/SERIAL NO KMHCF35C23U265981 | MILEAGE 9

YEAR 2003 | MAKE HYUNDAI | MODEL ACCENT | BODY 3DR HB CPE L | COLOR SILVER MIST | TO BE DELIVERED 07/05/2003

## TRADE-IN DESCRIPTION & LIEN DISCLOSURE

| YEAR | MAKE | MODEL |
| SERIAL NO | | |
| LICENSE NO N/A | EXPIRATION | MILEAGE N/A |
| NET AMOUNT OF LIEN N/A | OWED TO | |

## TRADE-IN DESCRIPTION & LIEN DISCLOSURE

| YEAR | MAKE | MODEL |
| SERIAL NO | | |
| LICENSE NO N/A | EXPIRATION | MILEAGE N/A |
| NET AMOUNT OF LIEN N/A | OWED TO | |

TERM: 60

TOTAL SALES PRICE reflects all discounts and credits from any and all offers or promotions made by dealer or authorized representatives

The motor vehicle described above is subject to the disclosure listed below by Florida Law, Chapter 319.14, F.S. The required disclosure is applicable to a selling motor vehicle dealer (transferor) or to a person (transfer) selling their vehicle or trading the vehicle to a motor vehicle dealer. The disclosure applies to wholesale and retail transactions. "Person" includes an individual, a business, or a licensed motor vehicle dealer.

Disclosure
(Police vehicle, Lease vehicle, Rebuilt vehicle, Taxicab, Assembled from parts, Combined, Kit car, Glider kit, Replicar, Flood vehicle)

(X) _____

**\* DEALER SERVICES**
This charge represents costs and profit to the seller/dealer for items such as inspecting, cleaning and adjusting new and used vehicles and preparing documents related to the sale.

TAG & TITLE FEES are an ESTIMATE. Customer pays actual fees charged by the Department of Motor Vehicles which may vary from the estimate collected

x _Melissa Mitchell_
Purchaser's Signature

IF THIS CONTRACT IS FOR A USED VEHICLE THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

This motor vehicle is sold "AS IS". The Selling Motor Vehicle Dealer assurances that the motor vehicle contains only original manufacturer's components, parts or accessories. I hereby acknowledge that I have read and considered the above disclosure

| I WAIVE my rights to Mechanical Breakdown Protection, and I understand that after the manufacturer's warranty has expired I will be responsible for all mechanical breakdown repair expense. | I WAIVE my rights to credit life insurance and/or disability insurance |
| SIGNATURE | SIGNATURE |
| DATE | DATE   Purchaser |

This order is not valid unless signed as accepted by dealer or his authorized representative

PURCHASER'S APPROVAL _Melissa Mitchell_

CO-PURCHASER'S APPROVAL

Purchaser acknowledges delivery, examination and acceptance of said vehicle in its present condition. This constitutes the entire contract and no waivers or modifications shall be valid unless written upon or attached to this contract, and said vehicle is accepted without any express or implied warranties, Agreements, representations, promises or statements, unless expressly set forth in writing in this contract at the time of purchase are not valid or binding. Purchaser acknowledges additional conditions printed on the reverse side hereof.

Purchaser (x) _Melissa Mitchell_

NOTICE TO THE PURCHASER: Do not sign this order before you read it or if it contains any blank spaces. You are entitled to an exact copy of the order you sign. PURCHASER ACKNOWLEDGES receipt and received, completed copy of this order comprising the entire agreement affecting his purchase and that this order is subject to Purchaser's satisfactory credit rating PURCHASER CERTIFIES he is of legal age to execute binding contracts in this State, and no credit has been extended except as appears above

Checks receipted as partial payment cannot be refunded until the first Friday 14 days after date of receipt

### TERMS OF SETTLEMENT

| | |
|---|---|
| TOTAL SALE PRICE | 11240.6 |
| LESS DISCOUNT & TRADE-IN ALLOWANCE | N/ |
| NET DIFFERENCE | 11240.6 |
| | N/ |
| | N/ |
| | N/ |
| | N/ |
| | N/ |
| EXTENDED WARRANTY | N/ |
| FLORIDA WASTE TIRE & BATTERY | 6.5 |
| DEALER SERVICES | 468.50 |
| TAXABLE SUB TOTAL | 11715.6 |
| STATE TAX | 702.9 |
| COUNTY TAX | 25.1 |
| LUXURY TAX | N |
| ESTIMATED TAG TITLE FEES | 202. |
| PAYOFF LIEN ON TRADE-IN | N |
| BALANCE DUE | 12645. |
| DEPOSIT   CR. CARD ☐ CASH ☐   CHECK ☐ | 2725. |
| CASH DOWN ON DELIVERY | 1000. |
| REBATE | |
| PAYABLE ON DELIVERY | 3725. |
| BALANCE FINANCED SUBJECT TO APPROVAL | 8920. |
| GAP | 495. |
| | 9415 |

ACCEPTED BY 435

DEALER OR HIS AUTHORIZED REPRESENTATIVE

| TOTAL BALANCE DUE | $ |

### INSURANCE INFORMATION

NAME OF INSURANCE COMPANY

POLICY NO.   EXPIRY DATE

NAME OF AGENT   TELEPHONE NO (  ) 758-9

_Exhibit A_

Reynolds and Reynolds  RC601211

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

DEAL NO. 16520
STOCK NO. Y3217

Dealer Number _____     Contract Number _____

| Buyer (and Co-Buyer) Name and Address (Including County and Zip Code) | Creditor - Seller (Name and Address) |
|---|---|
| MELISSA MITCHELL<br>117 NEPTUNE LN 0E<br>HOLMES BCH FL 34217 COUNTY MANATEE | BUCHANAN JENKINS HYUNDAI OF<br>BRADENTON<br>2563 1ST STREET<br>BRADENTON FL 34208 |
| Buyer's Month of Birth: APRIL | |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of 17.94 % per year. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2003 | HYUNDAI ACCENT | | KMHCF35C23U265981 | ☒ personal, family or household use<br>☐ business<br>☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The Cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $3725.00 |
|---|---|---|---|---|
| 17.87 % | $ 4735.79 | $ 9448.81 | $ 14184.60 | $ 17909.60 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 236.41 | Monthly beginning 08/16/2003 |

Or As Follows:

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of the part of the payment that is late.

**Prepayment.** If you pay off all your debt early, you may have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including $ 727.94 sales tax) ............ $ 12437.06 (1)
2. Total Downpayment =

   Trade-In _____ (Year) (Make) (Model)

   Trade-In _____ (VIN)

   | | | |
   |---|---|---|
   | Gross Trade-In Allowance | $ | N/A |
   | Less Pay Off Made By Seller | $ | N/A |
   | Equals Net Trade In | $ | N/A |
   | + Cash | $ | 2725.00 |
   | + Other  REBATE | $ | 1000.00 |

   (If total downpayment is negative, enter "0" and see 4H below) ........ $ 3725.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2) ........ $ 8712.06 (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):

   A Cost of Optional Credit Insurance Paid to the Insurance Company or Companies.

   | | | |
   |---|---|---|
   | Life | $ | N/A |
   | Disability | $ | N/A |

---

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. Your choice of insurance providers will not affect our decision to sell or extend credit to you.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

### Optional Credit Insurance

☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both

☐ Credit Disability (Buyer Only)

Premium:

Credit Life $ _____ N/A

Credit Disability $ _____ N/A

Insurance Company Name _____ N/A

Home Office Address _____ N/A

Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

If the box above is checked to indicate that you want credit life insurance, please read and sign the following acknowledgments:

1. You understand that you have the option of assigning any other policy or policies you own or may procure for the purpose of covering this extension of credit and that the policy need not be purchased from us in order to obtain the extension of credit.

Buyer _____ Date _____

Co-Buyer _____ Date _____

2. You understand that the credit life coverage may be deferred if, at the time of application, you are unable to engage in employment or unable to perform normal activities of a person of the age and sex. (You need not sign this acknowledgement if the proposed credit life insurance policy does not contain this restriction.)

Buyer _____ Date _____

*Exhibit B*

| | | | | |
|---|---|---|---|---|
| C | Official Fees Paid to Government Agencies | | $ | N/A |
| D | Government Documentary Stamp Taxes | | $ | N/A |
| E | Other Taxes Not Included in Cash Price | | $ | N/A |
| F | Government License and/or Registration Fees | | | |
| | (Identify) LIC FEE | | $ | 200.00 |
| G | Government Certificate of Title Fees | | $ | N/A |
| H | Other Charges (Seller must identify who is paid and describe purpose) | | | |
| | to N/A for Prior Credit or Lease Balance | | $ | N/A |
| | to N/A for N/A | | $ | N/A |
| | to STATE OF FL for BATTERY/TIRE/MVWRF | | $ | 6.50 |
| | to N/A for N/A | | $ | N/A |
| | to N/A for N/A | | $ | N/A |
| | to N/A for N/A | | $ | N/A |
| | to N/A for N/A | | $ | N/A |
| | to N/A for N/A | | $ | N/A |
| | Total Other Charges and Amounts Paid to Others on Your Behalf | | $ | 736.75 (4) |
| 5 | Loan Processing Fee Paid to Seller (Prepaid Finance Charge) | | $ | N/A (5) |
| | Amount Financed (3 plus 4) | | $ | 9448.81 |
| | Payment Schedule: 60 installments of $ 236.41 each, monthly beginning 08/16/2003 | | | |

or as follows

3. You understand that the benefits under the policy will terminate when you reach a certain age and affirm that your age is accurately represented on the application or policy.

Buyer _____ Date _____

Co-Buyer _____ Date _____

**Other Insurance**

☒ GAP .................................... 60
Type of Insurance ......................... Term
Premium $ ................................. 495.00
Insurance Company Name ................... JM&A
Home Office Address PO BOX 9410
DEERFIELD BEACH, FL 33443

I want the insurance checked above.

Buyer Signature _____ Date 07/05/03

Co-Buyer Signature _____ Date _____

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

Returned Check Charge: If any check or order of payment you give us is dishonored, you will pay a charge if we make demand that you do so. The charge will be $25 if the check amount is $50 or less; $30 if the check is over $50 but not more than $300; $40 if the check amount is over $300, or such amount as permitted by law.

OPTION: ☐ You pay no finance charge if the amount financed, item 6, is paid in full on or before N/A Year ____ SELLERS INITIALS _____

## NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others. Buyer (and any Co-Buyer) initials _____
See back for other important agreements.

**NOTICE TO THE BUYER: a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.**

**You agree to the terms of this contract and confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs _____ Date 07/05/03 Co-Buyer Signs _____ Date _____

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The co-buyer or other owner knows that the Creditor has a security interest in the vehicle and consents to the security interest.

Other owner signs here _____

Seller signs _____ Date 07/05/03 By _____ Address _____ Title _____

Seller assigns its interest in this contract to _____ (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse ☐ Assigned without recourse ☐ Assigned with limited recourse

Seller BUCHANAN JENKINS HYUNDAI OF BRADENTON By _____ Title _____

LAW FORM NO. 553-FL REV. 2000 U.S. PATENTNO. 5347157
©2002 Reynolds and Reynolds TO ORDER: www.argusw.com, 1-800-344-0996, fax 1-800-531-4395
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**CUSTOMER/TRUTH IN LENDING COPY**

*Exhibit B (cont'd)*

## CERTIFICATION OF POLLUTION CONTROL DEVICES OR SYSTEMS

STOCK NO

CUSTOMER'S NAME

FLORIDA LAW PROHIBITS THE OPERATION, SALE OR LEASE OR TRANSFER OF TITLE OF ANY AUTOMOBILE OR LIGHT DUTY TRUCK VEHICLE 1975 OR NEWER WITH A REGISTERED WEIGHT 10,000 LBS OR LESS, THAT HAS BEEN TAMPERED WITH. TAMPERING MEANS THE DISMANTLING, REMOVAL OR RENDERING INEFFECTIVE OF ANY AIR POLLUTION CONTROL DEVICE OR SYSTEM WHICH HAS BEEN INSTALLED ON A MOTOR VEHICLE BY THE MANUFACTURER EXCEPT TO REPLACE SUCH DEVICE OR SYSTEM WITH A DEVICE OR SYSTEM EQUIVALENT IN DESIGN AND FUNCTION TO THE PART THAT WAS ORIGINAL INSTALLED ON THE MOTOR VEHICLE. SEE 316.2935 F.S.

### VEHICLE DESCRIPTION

CHECK ONE:     XX Motor Vehicle     Mobile Home     Vessel

| Vehicle Identification Number | Year | Make | Body | Color |
| --- | --- | --- | --- | --- |
| KMHCF35C23U265981 | 2003 | HYUNDAI | SILVER | 3DR HB |

RULE 62-242.700 FLORIDA ADMINISTRATIVE CODE

AS A MOTOR VEHICLE DEALER LICENSED TO TRADE IN THE STATE OF FLORIDA, I HEREBY CERTIFY THAT THE FOLLOWING AIR POLLUTION CONTROL DEVICES AND SYSTEMS OF THE VEHICLE IF INCLUDED BY THE VEHICLE MANUFACTURER ON THIS VEHICLE, HAVE NOT BEEN TAMPERED WITH BY ME OR MY AGENTS, EMPLOYEES OR OTHER REPRESENTATIVES.

I ALSO HEREBY CERTIFY THAT I, OR PERSONS UNDER MY SUPERVISION, HAVE INSPECTED THIS MOTOR VEHICLE AND BASED ON SAID INSPECTION HAVE DETERMINED THAT THE BELOW LISTED AIR POLLUTION CONTROL DEVICES AND SYSTEMS IF INSTALLED ON THE VEHICLE MANUFACTURER OR IMPORTER ARE IN PLACE AND APPEAR TO BE PROPERLY CONNECTED AND UNALTERED AS DETERMINED BY VISUAL OBSERVATION.

THIS CERTIFICATION SHALL NOT BE DEEMED OR CONSTRUED AS A WARRANTY THAT ANY AIR POLLUTION CONTROL DEVICE OR SYSTEM OF THE VEHICLE IS FUNCTIONAL OR IN FUNCTIONAL CONDITION NOR SHALL IT BE DEEMED THE EXCEPTION OR DELIVERY OF THIS CERTIFICATION CREATE BY ITSELF PROVIDE FOR A CAUSE OF ACTION BETWEEN THE PARTIES TO THIS TRANSACTION.

X _(signature)_
TRANSFEROR'S SIGNATURE

BUCHANAN JENKINS HYUNDAI OF BRADENTON
PRINTED NAME

2503 1ST STREET
TRANSFEROR'S ADDRESS (STREET)

| BRADENTON | FL | 34208 |
| --- | --- | --- |
| CITY | STATE | ZIP CODE |

FIRM/DEALERSHIP

07/05/2003
DATE OF STATEMENT

X _(signature)_
TRANSFEREE'S SIGNATURE

MELISSA MITCHELL
PRINTED NAME

MELISSA MITCHELL
TRANSFEREE'S NAME

117 NEPTUNE LN #E
TRANSFEREE'S ADDRESS (STREET)

| HOLMES BCH | FL | 34217 |
| --- | --- | --- |
| CITY | STATE | ZIP CODE |

STOCK NO   Y3217

(CHECK ONLY ONE OF THE FOLLOWING COLUMNS)

| 1975 TO 1979 YEAR: | 1980 AND NEWER YEAR: |
| --- | --- |
| ☐ CATALYTIC CONVERTER | ☐ CATALYTIC CONVERTER |
| ☐ UNVENTED FUEL CAP | ☐ UNVENTED FUEL CAP |
| | ☐ POSITIVE CRANKCASE VENTILATION SYSTEM (PCV) |
| | ☐ THERMOSTATIC AIR CLEANER (TAC) |
| | ☐ EXHAUST GAS RECIRCULATION SYSTEM (EGR) |
| | ☐ AIR PUMP AND/OR AIR INJECTION SYSTEM (AIS) |
| | ☐ OXYGEN SENSOR (O2) |
| | ☐ FUEL EVAPORATION EMISSIONS SYSTEM (EVP) |

---

## DIVISION OF MOTOR VEHICLES
Neil Kirkman Building • Tallahassee, Florida 32399-0610

### SEPARATE ODOMETER DISCLOSURE STATEMENT AND ACKNOWLEDGEMENT
(Instructions on Reverse Side)

### VEHICLE DESCRIPTION

CHECK ONE:     XX Motor Vehicle     Mobile Home     Vessel

| Vehicle Identification Number | Year | Make | Body | Color |
| --- | --- | --- | --- | --- |
| KMHCF35C23U265981 | 2003 | HYUNDAI | SILVER | 3DR HB |

### ODOMETER DISCLOSURE STATEMENT

WARNING: Federal and State law requires that you state the mileage in connection with an application for a Certificate of Title. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I, BUCHANAN JENKINS HYUNDAI OF
BRADENTON
(Print Transferor's Name) (Seller)

STATE THAT THIS MOTOR VEHICLE'S

5 DIGIT OR   6 DIGIT ODOMETER NOW READS:   XX (NO TENTHS)

MILES, DATE READ   07 / 05 / 03   AND TO THE BEST OF MY KNOWLEDGE THAT IT REFLECTS THE ACTUAL MILEAGE OF THE VEHICLE DESCRIBED IN THIS DOCUMENT UNLESS ONE OF THE FOLLOWING IS CHECKED:

CAUTION:
1   I HEREBY CERTIFY THAT, TO THE BEST OF MY KNOWLEDGE, THE ODOMETER READING REFLECTS THE AMOUNT OF MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS.

DO NOT CHECK

2   I HEREBY CERTIFY THAT THE ODOMETER READING IS NOT THE ACTUAL MILEAGE. WARNING - ODOMETER DISCREPANCY

IF ACTUAL
MILEAGE

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

_(signature)_
(Transferor's Signature) (Seller)

BUCHANAN JENKINS HYUNDAI OF
BRADENTON
(Transferor's Hand Printed Name)

2503 1ST STREET
(Transferor's Street Address)

| BRADENTON | FL | 34208 |
| --- | --- | --- |
| (City) | (State) | (Zip) |

_(signature)_
(Transferee's Signature) (Buyer)

MELISSA MITCHELL
(Transferee's Hand Printed Name)

117 NEPTUNE LN #E
(Transferee's Street Address)

| HOLMES BCH FL 34217 | |
| --- | --- |
| (City) | (State) (Zip) |

LAW FORM N° 7102-A

Exhibit C

STATE OF FLORIDA
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES
DIVISION OF MOTOR VEHICLES
Neil Kirkman Building – Tallahassee, Florida 32399

STK# Y3217
DL# 16520

## APPLICATION FOR TEMPORARY LICENSE PLATE

TEMPORARY LICENSE PLATE NUMBER __F959823__

THIS IS TO CERTIFY THAT __MELISSA MITCHELL__

__117 NEPTUNE LN #E HOLMES BCH FL 34217__

(Street and Number)    (Post Office)    (City)    (State)    (Zip)

HAS MADE APPLICATION FOR AND HAS BEEN ISSUED A TEMPORARY

LICENSE PLATE ON __JUL    5th    2003__    **NOT VALID AFTER**

(Month)    (Day)    (Year)

__AUG    3rd    2003__    FOR THE FOLLOWING MOTOR VEHICLE:

(Month)    (Day)    (Year)

__2003 HYUNDAI ACCENT    SILVER M    KMHCF35C23U265981__

(Make of Vehicle)    (Type)    (Color)    (Identification Number)

DEALER VI 1911

__BUCHANAN JENKINS HYUNDAI OF BRADENTON__ BY

(Name of Issuing Agency/Dealer & Dealer's License #, if Applicable)

__2583 1ST STREET BRADENTON FL 34208__

(Address of Issuing Agency/Dealer)

### AUTHORIZED ISSUING AGENCY USE ONLY

☐ Mark Box, if this temporary license plate will be used solely for
demonstration purposes

☐ Mark Box, if this temporary license plate will be used solely for
the delay in the manufacture of a personalized license plate

☐ Mark Box, if this temporary license plate will be used solely for
other purposes, please explain: _____

Signature of the Applicant _____

### INSTRUCTIONS

The original (accurately completed) copy (White) of this form must be given to the
APPLICANT. This form is issued to the applicant as a temporary permit and must be
carried in his/her possession at all times while the vehicle is being operated with the
temporary license plate (until expiration).

THE TEMPORARY LICENSE PLATE MUST BE DESTROYED WHEN:

1. The regular license plate is received by the applicant.
2. The temporary license plate expires.

The Duplicate Copy (Yellow) of this form must be retained by the authorized issuing
agency for at least one (1) year.

WARNING: Any person unlawfully using any such temporary license plate or violating
any rule or regulation issued by the Division of Motor Vehicles pursuant to this act shall
be guilty of a misdemeanor of the second degree.

Original (White): Applicant    Duplicate (Yellow): Issuing Agency

HSMV 83091 (Rev. 12/01) S

Exhibit D

CUSTOMER'S NAME                                          STOCK NO.

## BAILMENT AGREEMENT FOR VEHICLE SPOT DELIVERY

### VEHICLE DESCRIPTION

xx

CHECK ONE: ☐ Motor Vehicle    ☐ Mobile Home    ☐ Vessel

| Vehicle Identification Number | Year | Make/Model | Color | Body | Title No |
|---|---|---|---|---|---|
| KMHCF35C23U285981 | 2003 | HYUNDAI | SILVER | 3DR HB | |

BUCHANAN-JENKINS
HYUNDAI OF BRADENTON
TEL (941) 747-9262
FAX (941) 744-1160

DEALER

X _Melissa Mitchell_
BUYER(S) SIGNATURE                          BUYER(S) PRINTED NAME

X _____
BUYER(S) SIGNATURE                          BUYER(S) PRINTED NAME

THIS AGREEMENT IS ATTACHED TO AND FORMS A PART OF THAT CERTAIN SALES AGREEMENT BETWEEN DEALER LISTED ABOVE AND THE UNDERSIGNED BUYER(S) AND CONCERNS THE VEHICLE LISTED ABOVE. PENDING CREDIT APPROVAL OF BUYER(S) BY LENDING INSTITUTION AND COMPLETION OF SALES TRANSACTION, INCLUDING ALL PAYMENTS TO BE MADE BY BUYER(S) OR ON BUYER(S) BEHALF AND ALL ADJUSTMENTS FOR BALANCES DUE ON TRADE-IN PAYOFFS. DELIVERY OF SAID VEHICLE BY DEALER IS HEREBY MADE TO BUYER(S) AS A CONVENIENCE TO BUYER(S), AND IS SUBJECT TO ALL TERMS AND CONDITIONS IN SAID SALES AGREEMENT AND IN THE PROMISSORY NOTE AND SALES AGREEMENT, IF ANY, EXECUTED CONCURRENTLY OR IN ACCORDANCE THEREWITH. SAID VEHICLE SHALL REMAIN THE PROPERTY OF THE DEALER. BUYER(S) REPRESENTS THAT ALL STATEMENTS MADE IN THE LOAN APPLICATION ARE TRUE AND CORRECT, AND DEALER MAKES DELIVERY OF SAID VEHICLE IN RELIANCE UPON THEIR TRUTH AND CORRECTNESS. ANY UNTRUE OR INCORRECT STATEMENT OR ANY OTHER MISREPRESENTATION OF BUYER(S) IN SAID APPLICATION OR IN ANY OTHER AFORESAID DOCUMENTS SHALL ENTITLE DEALER, AT HIS DISCRETION, TO IMMEDIATELY RESCIND THE SALE. UPON RESCINDING THE SALE, BUYER(S) SHALL PROMPTLY RETURN SAID VEHICLE TO DEALER AT DEALER'S ADDRESS IN GOOD CONDITION. BUYER(S) SHALL BE LIABLE TO DEALER FOR ALL DAMAGE TO, DESTRUCTION TO, ABUSE OF, EXCESSIVE WEAR AND/OR EXCESSIVE MILEAGE AND USE UPON SAID VEHICLE WHILE IN THE POSSESSION OF THE BUYER(S). "EXCESSIVE MILEAGE AND USE" AS DESCRIBED HEREIN SHALL BE PRESUMED WHEN THE TOTAL MILES WHICH SAID VEHICLE IS DRIVEN WHILE IN BUYER(S) POSSESSION EXCEEDS AN AVERAGE OF TWENTY (20) MILES FOR EACH DAY IN BUYER(S) POSSESSION. IN THE EVENT THAT THE AVERAGE MILEAGE EXCEEDS THE AFOREMENTIONED TOTAL, THE BUYER(S) IS/ARE RESPONSIBLE TO PAY UPON DEMAND, AT A RATE OF TWENTY (20) CENTS PER MILE, TO THE DEALER, FOR EVERY MILE EXCEEDING AVERAGE DAILY USE. THIS SUM SHALL BE ADDED TO ANY AMOUNTS OWED FOR DAMAGE, DESTRUCTION OR ABUSE. ALL FUNDS ON DEPOSIT WITH DEALER SHALL BE APPLIED TO MONIES DUE DEALER AND THE BALANCE MAY, AT DEALER'S DISCRETION, BE HELD BY DEALER FOR DAMAGES. IF SAID SUMS ARE INSUFFICIENT, DEALER MAY PROCEED AGAINST THE BUYER(S) BY OTHER LEGAL REMEDIES TO FULLY RECOVER LOSSES. IF DEALER IS ABLE TO PROVIDE BUYER(S) WITH FINANCING ACCORDING TO THE TERMS OF THE SALES AGREEMENT, SAID AGREEMENT SHALL BE BINDING UPON BUYER(S) AND ENFORCEABLE BY DEALER.

LAW® FORM NO. 7001-02-FL (REV 02/02) © 2002 Reynolds and Reynolds® Order Toll Free 1-800-344-0996 Fax 1-800-531-9055

BAILMENT AGREEMENT FOR VEHICLE SPOT DELIVERY

_Exhibit E_