UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

MELISSA A. MITCHELL,

           Plaintiff,

    vs.

12-2000 L.L.C. d/b/a , BUCHANAN

JENKINS HYUNDAI OF BRADENTON,

SOUTHERN AUTO FINANCE CORPORATION,

AFFILIATED FINANCIAL CORPORATION,

CENTRIX FINANCIAL L.L.C., TRANSOUTH

FINANCIAL CORPORATION, JOHN E.

TOSCH, VERNON G. BUCHANAN, DONALD R.

JENKINS, SALVATORE ROSA,

          Defendants

Case No.: 8:03-CV-1598-T23-EAJ

PLAINTIFF'S 2ND AMENDED COMPLAINT
JURY DEMAND

 

    Plaintiff, Melissa A. Mitchell through undersigned counsel submits her second amended complaint as authorized by this Court's order dated April 14th 2004.

)                                    )

## Introduction

Plaintiff, Melissa A. Mitchell (hereinafter "Plaintiff")
sues defendants 12-2000 L.L.C. d/b/a Buchanan-Jenkins
Hyundai of Bradenton (hereinafter Buchanan-Jenkins OR 12-2000
L.L.C.), Southern Auto Finance Corporation (hereinafter Southern),
Affiliated Financial Corporation (hereinafter Affiliated),
Centrix Financial L.L.C.  (hereinafter Centrix), TranSouth
Financial Corporation (hereinafter TranSouth), John E. Tosch
(hereinafter Tosch), Vernon G. Buchanan (hereinafter Buchanan),
Donald R. Jenkins (hereinafter Jenkins) and Salvatore Rosa
(hereinafter Rosa) for violations of state and federal law in
connection with the fraudulent yo-yo sale scheme run by
defendants Tosch, Buchanan, Jenkins and Rosa through their
enterprise 12-2000 L.L.C.

## JURISDICTION AND PARTIES

1. This Court has jurisdiction pursuant 18 USC § 1964
(c), 15 USC § 1691(e)(f), 15 USC § 1667 (d), 28 USC § 1331,
15 USC § 1640 and 28 USC § 1367.

2. Plaintiff, is a natural person residing in Manatee
County Florida.

3. Defendant Buchanan-Jenkins is a Florida Corporation
engaged in Business in Manatee County Florida.

4. Defendant Southern is a Florida Corporation engaged
in business in Manatee County Florida.

5. Defendant Affiliated is a Florida corporation engaged in business in Manatee County Florida.

6. Defendant Centrix is a foreign corporation engaged in business in Manatee County Florida.

7. Defendant TranSouth is a foreign corporation engaged in business in Manatee County Florida.

8. Defendant Tosch is a nature person believed to reside in the State of Florida, is the secretary and vice president of 12-2000 L.L.C. and conducts business in Manatee County Florida.

9. Defendant Buchanan is a natural person believed to reside in the State of Florida, is an officer and director of 12-2000 L.L.C. and conducts business in Manatee County Florida.

10. Defendant Jenkins is a natural person believed to reside in the State of Florida, is a manger of 12-2000 L.L.C. and conducts business in Manatee County Florida.

11. Defendant Rosa is a natural person believed to reside in the State of Florida, was the treasurer 12-2000 L.L.C. at all times pertinent to this litigation and conducts business in Manatee County Florida.

)                                    )

**COUNT ONE: VIOLATION OF 18 USC 1962 (c), 18 USC 1964 (c) RICO  (DEFENDANTS TOSCH, BUCHANAN, JENKINS AND ROSA)**

**FRAUDULENT YO-YO SALE SCHEME**

12. Plaintiff realleges, reiterates and restates paragraphs 1-11.

13. This is an action against defendants Tosch, Buchanan, Jenkins and Rosa for actual, trebled and punitive damages pursuant to the Racketeer Influenced and Corrupt Organizations Act(Rico), 18 USC 1962(c), 18 USC 1964 (c).

14. The fraudulent yo-yo sale scheme devised by defendants Tosch, Buchanan, Jenkins and Rosa is blatant attempt to defraud the most vulnerable consumers in our society those who have had past credit problems and bankruptcies. This scheme to defraud these consumers is an established business practice that is both routine and on going.

15. The scheme works in the following manner first advertisements are placed into the local media promising 100% approval regardless of past credit problems including repossessions and bankruptcies such terms are used as "**<u>EASY CREDIT</u> CALL MR. BROWN TODAY**","**100% credit approval**", "**<u>WE SAY YES WHEN OTHERS SAY NO</u>**","**YOU RIDE NO MATTER WHAT**" and "**<u>1 HOUR APPROVAL GURANTEED</u>**" (Examples of this advertising is attached

)                                    )

as exhibit A 1-7, showing Buchanan-Jenkins advertisements beginning from
July 1,2003 as published in the Bradenton Herald, the most recent
advertisement exhibit A-1 was taken from the Bradenton Herald dated
04/02/2004). This example A-1 also shows the continuing and
pervasive nature of the fraudulent scheme. The scheme
continues to be run even while this litigation is pending in
this Court. The advertisement is designed to bring consumers
with poor credit to a new car dealership, absent this
advertisement it is unlikely these consumers would frequent
a new car dealership given their credit history.

A. It was this type of advertising that prompted
the plaintiff to place an internet application with
Buchanan-Jenkins on or about 07/05/2003.

16. Second, as the consumers contact the dealership in
response to such advertisements, their credit histories are
accessed via an interstate wire transmission and the
consumers are "sorted" into two groups. Those consumers who
have adequate credit histories so as to allow the sale of
the car note in the secondary market are sold a vehicle.
Those who have poor credit histories are labeled as targets
to be defrauded through the yo-yo sales scheme.

A. On 07/05/2004 Buchanan-Jenkins accessed the
plaintiff's credit history and was well aware that it could
not sell a car note issued to her in the secondary market

)                              )

(attached as exhibit B is a copy of credit inquires as obtained from Equifax).

17. Third, once the consumers to be defrauded are identified they are feed totally false information that reinforces the advertising used to bring these consumers into the dealership. They are told that they will be financed, that Buchanan-Jenkins is able to finance everyone and that they can **own** a car today.

A. On 07/05/2003 salesman Roger Riffle(hereinafter Riffle) called the plaintiff at her home and stated that she had been financed for a 2003 two-door Hyundai Accent and that plaintiff should bring her down-payment, pay stubs, phone bill, another utility bill, insurance, six references so the sale could be made.

B. On 07/05/2003 plaintiff brought the required materials and reported to Buchanan-Jenkins and test drove the vehicle. Upon returning plaintiff again asked if she was financed and salesman Roger Riffle responded "you wouldn't be here if we couldn't".

C. Ray Buril (hereinafter Buril) a sales manger approached the plaintiff stating he wanted to sell plaintiff a car **today** and **"What do I need to get you to buy this car today"**.

D. Plaintiff responded we just need to agree on a price.

-6-

E. Buril and plaintiff agreed on a price after which, Buril called out to Riffle to prep the car, take care of the title, plate and insurance because plaintiff had just bought the car.

F. All of these measures are designed to reinforce the false advertising and conceal the fact that Buchanan-Jenkins never intends to sell the vehicle to the consumer only defraud them pursuant to the scheme devised by defendants Tosch, Buchanan, Jenkins and Rosa.

18. Fourth, once the consumer agrees to purchase the car and hands over large sums of money to Buchanan-Jenkins they are put through what appears to be a normal sales process. The consumer signs a Retail Installment Sales Contract (RISC)( Attached as exhibit C), buyers order (Attached as exhibit D), pollution control and odometer disclosures(attached as exhibit E), the consumer is issued temporary t-tags and finally full coverage auto insurance is required to be purchased.

A. The same was done on 07/05/2003 to the plaintiff.

19. The temporary tags are necessary to the scheme because even the least sophisticated consumer would be on notice that something was afoot when after being told they purchased the vehicle dealer tags remained.

)                                    )

        A. On 07/05/2003 plaintiff was issued temporary
tags for the vehicle. (attached as exhibit F)

        20. Further, once being issued the dealer submits a
copy to the state so that the State is aware that a
temporary tag has been issued and to whom it was issued and
this is done either via a mailing or wire communication.

        21. When the consumer purchases the full coverage auto
insurance they are given a name of lien holder, the name
given is never Buchanan-Jenkins' despite, the fact that the
Buchanan-Jenkins' through its illegal "bailment agreement"
purports to still be the "owner" of the vehicle. (Attached as
exhibit G is the insurance policy purchased at Buchanan-Jenkins on
07/05/2004 in which the lien holder Regional Acceptance Corporation as
supplied by salesman Roger Riffle and the sales manager).

        A. Defendant through its Answers and objections to
plaintiff's second set of interrogatories has admitted that
the information of Regional Acceptance as lien holder was
false that it knew at the time the information was given it
was false.(See exhibit H, ¶ 2)

        22. In addition to the above referenced documents
defendants Tosch, Buchanan, Jenkins and Rosa through their
enterprise 12-2000 L.L.C. fraudulently induces consumers to
enter into a "bailment contract"( Attached as exhibit I).

        23. This unconscionable document states that Buchanan-
Jenkins is the owner of the vehicle and that the consumer

will incur substantial charges for the temporary use of the vehicle.

24. This document is a direct contradiction to all statements and actions given to consumers that they have bought the car.

25. The "bailment contract" is not explained and is in fact presented as simply another disclosure. To reinforce this statement that the "bailment contract" is simply another disclosure, it is purposely designed to be identical to the odometer disclosure and pollution control disclosure (Compare plaintiff's exhibits E and I to see the similarity in border style and in fact both documents contain the same form number LAW form No. 7001-02-Fl, just to name a few of the similarities).

A. On 07/05/2003 Riffle specifically presented the bailment with the odometer and pollution disclosures and told plaintiff that said document was simply another meaningless procedural disclosure.

26. Further the consumer is never given a copy of the "Bailment Contract" it is purposely withheld from the documents supplied to the consumer the only time its existence is stated is when Buchanan-Jenkins phones the consumer for return of the vehicle.

A. Plaintiff received her copy on or about 08/01/2003 at a hearing in state court for Manatee County.

)                                    )

27. Further it is the only document that requires a signature before the text of the document; all other documents require a signature after the text of the document. This is simply one more way in which to hide the existence of the "bailment contract".

28. Defendants, Tosch, Buchanan, Jenkins and Rosa attempt to legitimize their fraudulent scheme by stating that they are merely conducting a "spot delivery" of a vehicle and providing a courtesy to the consumer. The truth is that first, in our modern society there is never a need to spot deliver a vehicle that a credit decision is made within fifteen minutes of submission of an application.(attached as exhibit J 1- 7 are turn-down notifications given on 07/07/2003 the same day the RISC was tendered for purchase, Further see exhibit A-6  Buchanan Jenkins advertising guaranteeing 1 hour credit approval.

29. Second, conditioning a RISC is outlawed by Florida Law Fla. Stat. 520.07 (1)(a) Specifically requires the RISC to be signed by both the consumer and the seller. It its yo-yo scheme only the buyer signs the RISC (see exhibit C).

30. Further, Fla. Stat. 520.07 (1)(a) requires the RISC to be complete as to all essential provisions before the buyer signs. In this yo-yo scheme the RISC is never complete because the condition contained in the separate document.

Finally, Fla Stat. 501.976 (9) contains similar prohibitions.

31. The only reason the "bailment contract" is included is to further the fraudulent yo-yo scheme so that not only do the defendants Tosch, Buchanan, Jenkins and Rosa have the consumer's money, they also have a document that states they own the vehicle thus the consumer is left out in the cold no automobile and no down-payment.

### 18 USC 1962(c), 18 USC 1964(C)

32. Upon information and belief beginning in or about March 27,2001 defendants Tosch, Buchanan, Jenkins and Rosa who are persons as defined by 18 USC 1961 (3) being employed by or associated with 12-2000 L.L.C. an enterprise as defined by 18 USC 1961 (4) which is engaged in activities which affected interstate and foreign commerce, acting in concert with other employees of 12-2000 L.L.C. did either directly or indirectly participate in a yo-yo sales scheme to steal from and defraud persons with poor credit by means of various fraudulent activities.

33. Defendants Tosch, Buchanan, Jenkins and Rosa Did willfully and knowingly conduct and participate in, directly and indirectly, the affairs of such enterprise through a

pattern of racketeering activity in violation of 18 USC §
1962 (c), 18 USC 1964(c).

34. The enterprise whose affairs were conducted through
a pattern of racketeering activity was, at all times
material hereto, a legal corporation under the laws of
Florida and a legal entity as defined by 18 USC 1961 (4).

35. The pattern of racketeering activity engaged in by
Tosch, Buchanan, Jenkins and Rosa as defined in 18 USC 1961
(1) consists of the following:

A. Acts of mail fraud in violation of 18 USC §
1341.

B. Beginning as early as March 27,2001 and
continuing to the present in furtherance of and for purpose
of executing the described schemes and artifices to defraud
and to obtain money by means of false pretenses the
defendants Tosch, Buchanan, Jenkins and Rosa in the Middle
District of Florida, on numerous occasions used and caused
to be used mail depositories of the United States Postal
Service by both placing and causing to be placed letters and
other mailable matter in the depositories and by removing
and causing to be removed letters and other mailable matter
from the depositories. Each use of the mails in connection
with the described schemes and artifices to obtain money by
means of false pretenses constitutes a separate and distinct

)                                      )

violation of 18 USC 1341. Upon information and belief the
mails include but not limited to the following.

   A. Communications with the State of Florida
regarding issuance of temporary tags in connection with its
fraudulent yo-yo scheme.

   B. Payment and communication relating to
advertising which is used to induce consumers with poor
credit to frequent the dealership.

   C. Communications and payment regarding the
licensed issued to 12-2000 L.L.C. under Fla. Stat. 520

   D. At sometime after 07/05/2003 the temporary tag
issued to the plaintiff was mailed to the State of Florida.

   35. The pattern of racketeering activity engaged in by
Tosch, Buchanan, Jenkins and Rosa as defined in 18 USC 1961
(1) consists of the following:


   A. Acts of wire fraud in violation of 18 USC §
1343 Tosch, Buchanan, Jenkins and Rosa have devised a yo-yo
car sale scheme whereby individuals with poor credit are
lured into the dealership with continuous and persistent
false advertising that states Buchanan-Jenkins can and will
finance all persons regardless of past credit history.


   B. Beginning as early as March 27, 2001 and
continuing to the present and in furtherance of and for

purposes of executing the described schemes and artifices to defraud and obtain money by false pretenses, Tosch, Buchanan, Jenkins and Rosa in the Middle District of Florida, on numerous occasions used and caused to be used wire communications in interstate and foreign commerce, by making and causing to be made wire communications. Each use of a wire communication in connection with the described scheme and artifices to defraud and obtain money by means of false pretenses constitutes a separate and distinct violation of 18 USC §1343. Upon information and belief the mails include but not limited to the following.

C. Interstate wire communications are used to obtain consumer credit reports, these consumer credit reports are then used to sort the consumers into two groups those who will be sold a vehicle and those who will be defrauded, this sorting is done by employees of 12-2000 L.L.C. at the insisting of the defendants Tosch, Buchanan, Jenkins and Rosa.

D. Interstate wire transmissions are made when the consumers application is submitted into the secondary market so that it appears as if an attempt was made to obtain credit however, at the time the application is submitted it is already known no entity will purchase the note, this activity is done by employees of 12-2000 L.L.C. at the

)                                    )

insisting of the defendants Tosch, Buchanan, Jenkins and
Rosa.( The third-party lenders all have minimum standards that
Buchanan-Jenkins knows, see exhibit J-5 showing that the plaintiff was
turned down for failing to meet minimum credit standards required by the
lender. Further see ex: H Defendant's answers and objections to second
interrogatories ¶ 4 where defendant denied that minimum standards apply
despite the clear language in ex: J-5 defendant is purposely misleading
in its response to cover-up its yo-yo sales scheme).

E. Still further interstate wire communications
are made when the consumer is told to use Buchanan-Jenkins
phone and internet connection to obtain insurance on the
vehicle they have just purchased, the consumer is directed
to this by employees of 12-2000 L.L.C. at the insisting of
the defendants Tosch, Buchanan, Jenkins and Rosa.

F. Use of the internet to solicit consumers with
poor credit to apply for credit knowing that such consumers
will only be defrauded of money.

G. Payment and communication relating to
advertising which is used to induce consumers with poor
credit to frequent the dealership.

H.  On 07/05/2003 the plaintiff's consumer credit
report was accessed by employees of 12-2000 L.L.C. in
furtherance of the described yo-yo sale scheme (see ex: B
noting that Buchanan-Jenkins accessed plaintiff's credit on
July 5, 2003.

)                                        )

I. On or about 07/07/2003 Buchanan-Jenkins submitted the plaintiff's credit application to numerous third-party financial institutions for purposes of further the described yo-yo sales scheme (see ex: J1-7).

J. On 07/05/2003 the plaintiff was caused to place an interstate phone call to progressive insurance this done to further the described fraudulent yo-yo sale scheme as devised by defendants Tosch, Buchanan, Jenkins and Rosa.

K. On 07/05/2003 the plaintiff was caused access the internet to contact esurance.com this was done to further the described fraudulent yo-yo sales scheme as devised by defendants Tosch, Buchanan, Jenkins and Rosa. (see ex: G noting the insurance policy purchased from esurance.com).

36. By reason of defendants Tosch, Buchanan, Jenkins and Rosa fraudulent yo-yo sale scheme plaintiff was injured in her property.

WHEREFORE, Plaintiff prays that defendants Tosch, Buchanan, Jenkins and Rosa be found jointly and severally liable for the following:

a. Actual damages to be proven at trial

b. That actual damages be trebled pursuant to 18 USC 1964(c).

c. Punitive damages in the amount of $500,000

)                                )

      d. Attorney's Fees and costs pursuant to 18 USC

         1964(c)

      e. Such further relief the Court deems just and

         equitable.

**COUNT TWO: VIOLATION OF THE TRUTH IN LENDING ACT, 15 USC 1638 AND THE REGULATIONS PROMULGATED THEREUNDER. (DEFENDANT BUCHANAN-JENKINS).**

37. Plaintiff realleges, reiterates and restates paragraphs 1-11.

38. This action is against defendant Buchanan-Jenkins for actual damages pursuant to 15 USC §1640(1) and statutory damages pursuant to 15 USC §1640(2)(A)(i) for violations of 15 USC 1638, for giving inaccurate disclosures.

39. The transaction between plaintiff and Buchanan-Jenkins was a sale by a creditor whereby plaintiff agreed to pay as compensation for the use of the property a sum substantially equal to or in excess of the aggregate value of the property and it was agreed that the plaintiff would become the owner of the property upon full compliance with her obligations under the contract. Pursuant to 15 USC 1602(g).

40. Buchanan-Jenkins is a person that regularly extends consumer credit which is payable by agreement in more than

)                                    )

four installments or for which a finance charge is or may be required and is the person to whom the debt arising from the consumer credit transaction is initially payable to on the face of the indebtedness. Pursuant to 15 USC 1602(f)

41. Plaintiff intended to obtain the property for primarily personal, family or household purpose. Pursuant to 15 USC 1602(h).

42. The contract was consummated at anyone of the following times.

### CONSUMMATION ON JULY 11, 2003
### WAIVER OF CONDITION PRECEDENT

F. The contract was consummated on July 11,2003 when any conditions that might have been conditions precedent had been waived inasmuch as it was learned that Buchanan-Jenkins electronically withdrew from Kurt Mitchell's bank the remaining balance on her down payment after learning her credit had been rejected by at least eight lending institutions on July 7, 2003. Despite knowing on July 7, 2003 that the RISC signed by plaintiff could not be sold, Buchanan-Jenkins did not inform the plaintiff instead it withdrew the remaining down-payment money and only on July 11, 2003, four days after the failure of the condition and after the withdraw of the additional money did Buchanan-Jenkins attempt to enforce the condition precedent. Further, these actions on the part of Buchanan-Jenkins are done to further the yo-yo sales scheme so Buchanan-Jenkins can keep most if not all of the consumer's down-payment.

)                              )

**CONSUMMATION ON JULY 11, 2003**

**CONSUMMATION UPON DISCOVERY OF THE FRAUD**

43. In the alternative, the contract was consummated on July 11, 2003 when the fraud as outlined below was discovered by the plaintiff.

A. Buchanan-Jenkins, through employee Riffle, stated to Plaintiff, while Plaintiff was at the dealership that plaintiff could get financing for the car.

B.   Buchanan-Jenkins, through its employee, Riffle, represented to Plaintiff that Plaintiff had obtained financing by listing Buchanan-Jenkins as "Creditor" on the RISC.

C.   Buchanan-Jenkins through its employees, Riffle and the finance manager, then represented to Plaintiff while plaintiff attempted to obtain online insurance that her car was financed through Regional Acceptance, 33859 U.S. HWY 19 N., Palm Harbor, FL 34684.

D.   Buchanan-Jenkins thus represented in writing and orally that plaintiff had received approved financing of the car when it knew or should have known that financing had not yet been obtained.

E. Plaintiff did rely and was justified in relying on the statements made by Riffle and Buril by purchasing insurance for the vehicle and tendering a $2750.00 down-payment

F. Buchanan-Jenkins represented that plaintiff had received approved financing in order to induce plaintiff to sign the contract, obtain insurance, and drive the car away

)                                    )

from the dealership believing the car to be owned by her in accordance with the RISC.

      G. Plaintiff did indeed sign the contract, obtain insurance, and drive the car away from the dealership believing the car to be owned by her in accordance with the RISC.

      H. The fraud was discovered on July 11, 2003 when Buchanan-Jenkins demanded return of the vehicle pursuant to the fraudulently induced "bailment agreement".

      F. Plaintiff acting pursuant to her rights under Florida law refused to honor the fraudulently induced "bailment agreement" thus rendering it null and void.

      I. Thus consummating the contract on July 11, 2003.

### CONSUMMATION ON JULY 11, 2003

### CONSUMMATION BASED UPON THE ILLEGALLITY

### OF THE CONDITION PRECEDENT UNDER FLA. STAT 520 et. seq

    44. In the alternative, the contract was consummated on July 11, 2003 when plaintiff learned that Buchanan-Jenkins had attempted to condition the RISC by fraudulently inducing her to sign a separate "bailment agreement" in violation of Florida Law. Further this "bailment agreement" is unenforceable due to defendant's failure to be properly licensed under Fla. Stat. 520.03.

      A. The RISC, which is a valid contract, entered into by plaintiff and Buchanan-Jenkins is a "retail installment contract" as defined by Fla. Stat. 520.02(14)

B. Buchanan-Jenkins is a "seller" as defined in Fla. Stat. 520.02(15).

C. The property of said transaction was a "motor vehicle" as defined by Fla. Stat. 520.02(9)

D. The plaintiff is a buyer as defined by Fla. Stat. 520.02(13).

E. Fla. Stat. 520.07(1)(a) specifically forbids the conditioning of retail installment contracts, by requiring that retail installment contracts shall be complete to all essential provisions prior to the signing by the buyer and that the RISC be signed by both parties.

F. Buchanan-Jenkins attempted to condition the RISC in violation of Fla. Stat. 520.07(a)(1) and also failed to sing the RISC in violation of Fla. Stat. 520.07(a)(1)

G. This unlawful attempt was discovered by the plaintiff on July 11, 2003 when Buchanan-Jenkins demanded the return of the vehicle pursuant to the unlawful condition contained in the separate "bailment agreement".

H. Further the defendant was not properly licensed under Fla. Stat. CH 520 et. seq. thus the condition is unenforceable under Florida Law.

I. Plaintiff upon learning of this unlawful condition exercised her rights pursuant to Florida law and refused to honor said condition thus consummating the contract.

)                                    )

**CONSUMMATION ON JULY 11, 2003 CONSUMMATION
BASED UPON THE ILLEGALLITY OF THE CONDITION PRECEDENT
UNDER FLA. STAT 501.901 et. seq**

45. In the alternative the contracted was consummated on July 11, 2003 when plaintiff learned of the illegal condition that Buchanan-Jenkins attempted to attach to the RISC in violation of Fla. Stat. 501.976(9).

A. Plaintiff is a "customer" as defined by Fla. Stat. 501.975(1).

B. Defendant Buchanan-Jenkins is a "dealer" as defined by Fla. Stat.501.975 (2)

C. The automobile is a "vehicle" as defined by Fla. Stat. 501.975(5).

D. Fla. Stat. 501.976(9) specifically forbids the conditioning of a RISC by requiring that any contract signed by a customer be fully completed at the time the customer signs the contract and that it accurately reflects the negations and agreement between the consumer and the dealer.

E. By obtaining plaintiff's signature on the RISC that Buchanan-Jenkins, through its employees, failed to complete fully or that did not accurately reflect the negotiations and agreement between the parties, Buchanan-Jenkins violated 501.976(9).

F. This unlawful attempt was discovered by the plaintiff on July 11, 2003 when Buchanan-Jenkins demanded

)                                    )

the return of the vehicle pursuant to the unlawful condition contained in the separate "bailment agreement".

G. Plaintiff upon learning of this unlawful condition exercised her rights pursuant to Florida law and refused to honor said condition thus consummating the contract.

46. Upon consummation Buchanan-Jenkins was required to give the following disclosures accurately.

A. The identity of the Creditor pursuant to 12 CFR 226.18(a).

B. The amount financed pursuant to 12 CFR 226.18(b).

C. The itemization of the amount financed pursuant to 12 CFR 226.18 (c).

47. The above referenced disclosures given on July 5, 2003 are inaccurate.

A. In particular the Annual Percentage rate stated in the TILA disclosures is 17.07%. The act allows for a .125% tolerance, thus the tolerance for this contract is 16.945 to 17.195. The correct interest rate based on a consummation date of July 11, 2003 is 17.20% which outside of the tolerances thus inaccurate.

48. As a result plaintiff has suffered damages.

WHEREFORE, plaintiff prays for the following

A. Actual damages in an amount to be determined at trial pursuant to 15 USC 1640(1).

)                                    )

   B. $9471.59 pursuant to 15 USC 1640 (2)(A)(i)

   C. Attorney fees and costs pursuant to 15 USC 1640(3)

   D. Any other such relief this Court deems just and equitable.

**COUNT THREE: VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT 15 USC 1691 AND THE REGULATIONS PROMULGATED THEREUNDER (DEFENDANTS BUCHANAN-JENKINS, SOUTHERN, AFFILIATED, CENTRIX, TRANSOUTH,).**

49. Plaintiff realleges, reiterates and restates paragraphs 1-11.

50. This action is against defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth for actual damages pursuant to 15 USC §1691e (a) and Punitive damages pursuant to 15 USC §1691e (b) for violations of 15 USC §1691 (d)(1-4).

51. Defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth regularly extend, renew or continues credit as defined in 12 CFR 202.2 (l) (2004).

   A. In particular defendant Buchanan-Jenkins participates in the credit decision by regularly setting the terms of such credit by accessing a consumer's credit report

)                                        )

and completing the RISC as to such terms as APR, finance
charge, term of the loan and down-payment required, as
defined in 12 CFR 202.2 (l) (2004) and then attempting to
sell the note in the secondary market (see ex: C a RISC with all
terms fully completed therein such terms of credit were determined and
set by Buchanan-Jenkins).


    B. Further Buchanan-Jenkins made an extension of
credit when it gave to the plaintiff temporary tags that
were valid for thirty-days, required full coverage insurance
to be purchased and allowed plaintiff to leave the
dealership with a vehicle valued at $12437.06, while
requiring a down-payment of only $2725.00 and allowing the
remainder of $9448.81 to be paid at some later date (see ex:
C).

    C. There is no doubt when plaintiff left the
dealership with the vehicle on 07/05/2003 plaintiff had
incurred a debt of $9448.81 to Buchanan-Jenkins of which
Buchanan-Jenkins deferred payment to a later date (see ex:
C).

    D. Buchanan-Jenkins has an agreement with Nichols
Financial to supply all adverse notices required by ECOA on
behalf of Nicolas Financial (ex: K ¶ 5 were Buchanan-Jenkins
dealership accepted all responsibility for adhering to the ECOA).

)                                    )

E. On or about 07/07/2003 Nicholas Financial took adverse action against the plaintiff (see ex. J-6).

F. Buchanan-Jenkins did not supply the adverse action notice as required.

G. Despite, Buchanan-Jenkins agreement to supply adverse action notices and the requirement that Buchanan-Jenkins must supply their own notice pursuant to 12 CFR 202.2 (1) (2004) as the institution that sets the terms of credit. It has no procedures and policies in place to comply and in fact never supplies the adverse action notice in regards to Nicholas Financial or on behalf of themselves.(see ex: L ¶6 of Defendants answers and objections to Plaintiff's interrogatories).

52. Plaintiff is an applicant as defined by 15 USC §1691a (b).

53. Defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth denied or revoked credit or refused to grant credit in substantially the amount or on substantially the terms requested.

54. As a result of this denial or revocation credit or refusal to grant credit in substantially the amount or on substantially the requested Defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth were required to give the following disclosures in writing within thirty-days of the denial or revocation credit or refusal to grant

)                                    )

credit in substantially the amount or on substantially the
terms requested pursuant to 15 USC §1691(d).

     A. A statement of reasons for the adverse action
taken. Pursuant to 15 USC 1691(d)(2)(A).

     B. The identity of the creditor taking adverse
action. Pursuant to 15 USC 1691(d) (4).

    55. Defendants Buchanan-Jenkins, Southern, Affiliated,
Centrix, TranSouth never gave such disclosure or such
disclosures were insufficient.

    56. Such failure by the defendants Buchanan-Jenkins,
Southern, Affiliated, Centrix, TranSouth was willful.

    57. As result plaintiff has sustained damages.

     WHEREFORE, Plaintiff prays that each defendant
Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth
be held individually liable for the following damages.

     A.   Actual damages in an amount to be proven
at trial

     B.   Punitive damages in the amount of
$10,000.00

     C. Award Plaintiff's costs and reasonable
attorney's fees in accordance with the Equal Credit
Opportunity Act, 15 U.S.C. § 1691e(c) and (d)

     D.   award such other relief as the Court
deems appropriate.

)                              )

**COUNT FOUR: VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 AND THE REGULATIONS PROMULGATED THEREUNDER (DEFENDANTS BUCHANAN-JENKINS, SOUTHERN, AFFILIATED, CENTRIX, TRANSOUTH, TOSCH,  BUCHANAN, JENKINS AND ROSA).**

58. Plaintiff realleges, reiterates and restates paragraphs 1-11.

59. This action is against defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth, Tosch, Buchanan, Jenkins and Rosa for actual pursuant to 15 USC §1681n(a)(1)A), 15 USC §1681n(a)(1)(B) and Punitive damages pursuant to 15 USC §1681n(2) for violations of 15 USC §1681(m) and 15 USC §1681q.

60. Defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth, Tosch, Buchanan, Jenkins and Rosa are persons as defined by 15 USC §1681a (b).

61. Plaintiff is a consumer as defined by 15 USC §1681a (c).

62. Defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth, Tosch, Buchanan, Jenkins and Rosa accessed plaintiffs credit report as defined in 15 USC §1681a (d).

)                                          )

63. Defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth, accessed and used plaintiff's consumer credit report for the following purposes.

      A. Determining the plaintiff's eligibility for credit.

      B. Determining the amount of down-payment plaintiff would be required to make.

      C. Determining which financial institutions to attempt to sell any car note signed by plaintiff.

      D. Determining the finance charge to be applied to any loan given to the plaintiff.

      E. Determining what ARP to charge the plaintiff.

64. Following this access and use of the consumer report the defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth, took adverse action as defined by 15 USC 1681a (k).

65. Which triggered the notice requirements of 15 USC 1681m.

66. At no time did defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth, make the required disclosures.

67. Such failure was willful

68. In respect to defendants Tosch, Buchanan, Jenkins and Rosa who are natural persons they knowingly and willfully obtained plaintiff's consumer credit report under

)                              )

false pretenses in violation of 15 USC 1681q through their enterprise 12-2000 L.L.C.

      A. Defendants Tosch, Buchanan, Jenkins and Rosa obtained the report for purposes of defrauding the plaintiff through their yo-yo sale scheme of which access to consumer credit reports are an integral part.

      B. Defendants Tosch, Buchanan, Jenkins and Rosa are natural persons.

   69. As a result plaintiff has suffered damages.

      WHEREFORE, Plaintiff prays that defendants Buchanan-Jenkins, Southern, Affiliated, Centrix, TranSouth, be found liable individually for the following damages

      A. Damages in the amount of $1,000.00 pursuant to 15 USC §1681n (1)(A)

      B. Punitive Damages in the amount of $25,000.00 pursuant to 15 USC 1681n (2)

      C. Attorneys fees and costs pursuant to 15 USC §1681n (3).

      D. Any other such relief the Court deems just and equitable.

      F. As against defendants Tosch, Buchanan, Jenkins and Rosa that they be held jointly and severally liable for the following damages.

       a. Actual or statutory damages pursuant to 15 USC 1681n (1)(B).

)                                    )

b. Punitive damages in the amount of $100,000.00 pursuant to 15 USC 1681n (2).

c. Attorneys fees and costs pursuant to 15 USC §1681n (3).

d. Any other relief the court deems just and equitable.

**COUNT FIVE: VIOLATION OF THE CONSUMER LEASE ACT AND REGULATIONS PROMULGATED THEREUNDER AS TO THE BAILMENT AGREEMENT (DEFENDANT BUCHANAN-JENKINS).**

70. Plaintiff realleges, reiterates and restates paragraphs 1-11.

71. This action is against defendant Buchanan-Jenkins, for actual and statutory damages pursuant to 15 USC §1640 (2)(A)(ii) for violations of 15 USC §1667a.

72. Plaintiff is a lessee as defined by 15 USC §1667 (2).

73. Defendant Buchanan-Jenkins is a lessor as defined by 15 USC §1667 (3).

74. The parties entered into a valid lease for personal property valued for a contractual obligation not exceeding $25,000.00. (see ex: I)

)                                    )

75. The personal property was to be used primarily for personal, family or household use.

76. The period of the lease was for a period of time exceeding four months.

77. Plaintiff is a natural person.

78. Buchanan-Jenkins failed to give the disclosures as required by 15 USC §1667a et seq. prior to consummation of the lease.

79. The plaintiff suffered damages as a result.

WHEREFORE, Plaintiff prays for the following relief.

A. Actual and statutory damages pursuant to 15 USC §1640 (2)(A)(ii)

B. Attorney's fees and costs pursuant to 15 USC 1640 (3).

C. Any other such relief the court deems just and equitable.


**COUNT SIX: FRAUD IN THE INDUCEMENT/CONSTRUCTIVE FRAUD (DEFENDANT BUCHANAN-JENKINS, TOSCH, BUCHANAN,JENKINS AND ROSA).**

80. Plaintiff realleges, reiterates, and restates Paragraphs 1-11.

81. Plaintiff sues defendant Buchanan-Jenkins, Tosch, Buchanan, Jenkins and Rosa for actual and punitive damages based upon the fraud perpetrated on the plaintiff pursuant

)                                    )

to the yo-yo scheme devised by Tosch, Buchanan, Jenkins and
Rosa executed through their enterprise 12-2000 L.L.C..

    82. On 07/05/2003 Buchanan-Jenkins, Tosch, Buchanan,
Jenkins and Rosa through employee Riffle phoned plaintiff in
response to plaintiff's internet application seeking
additional information after taking such information Riffle
said he would try to get plaintiff approved for financing
and call plaintiff back, Riffle then accessed plaintiff's
credit report and labeled her a target for the yo-yo sale
scheme as devised by Tosch, Buchanan, Jenkins and Rosa.

    83. On 07/05/2003 Riffle phoned back approximately 30
minutes later and pursuant to the yo-yo sale scheme
intentionally misrepresented that she had been financed for
a specific vehicle, Riffle stated **"We've got something for
you.  It would be a 2003 Hyundai Accent, 2 door."**

    84. On 07/05/2003 plaintiff was directed to come to the
Buchanan-Jenkins dealership, bringing with her her pay
stubs, phone bill, another utility bill, insurance, six
references, and $3,000.00 for a down payment to complete the
sale.

    85. Plaintiff on 07/05/2003 went to the Buchanan-Jenkins
dealership with the required materials and down-payment with
intentions of completing the sale. and test drove the car, a
2003 Hyundai Accent, 2 door, VIN no. KMHCF35C23U265981.

    86. On 07/05/2003 Buchanan-Jenkins, Tosch, Buchanan,
Jenkins and Rosa, through employee Riffle, once again stated
to plaintiff while plaintiff was at the dealership that
plaintiff could get financing for the car this statement was
made to further the illegal yo-yo sale scheme.

)                                    )

87. Plaintiff understood that Riffle was submitting her credit information to the finance manager while she test drove the car but this was not the case the plaintiff's credit was already known to Riffle and Buril and was simply one more deception in the yo-yo sales scheme.

88.  Upon her return from the test drive, plaintiff again asked Riffle whether she would get financed, to which Riffle responded, **"You wouldn't be here if we couldn't"**.

89. Buril  a sales manager, approached MITCHELL and told her he wanted to **sell her a car today**, stating, **"What do I need to do to get you to buy this car today?"**.

90. The statement made to plaintiff as stated in ¶83 are all part of the yo-yo sales scheme devised by Tosch, Buchanan, Jenkins and Rosa.

91. Plaintiff responded that she and Buchanan-Jenkins needed to agree on a price.

92.  Buril and plaintiff agreed on a price, after which, Buril called out to Riffle to prep the car, take care of the title, plate, and insurance because plaintiff had just bought the car.

93. Plaintiff sat with Buril signed the Buyer's Order, RISC and several half-page legal forms dealing with Odometer disclosures and pollution devices.

94. Buchanan-Jenkins, Tosch, Buchanan, Jenkins and Rosa through employee, Riffle, represented to Plaintiff that plaintiff had obtained financing by listing Buchanan-jenkins as "Creditor" on the RISC.

95. Buchanan-Jenkins, Tosch, Buchanan, Jenkins and Rosa through employees, Riffle and Buril, then represented to plaintiff while plaintiff attempted to obtain online

)                                    )

insurance that her car was financed through Regional
Acceptance, 33859 U.S. HWY 19 N., Palm Harbor, FL 34684.

96. Buchanan-Jenkins, Tosch, Buchanan, Jenkins and Rosa
thus represented in writing and orally that plaintiff had
received approved financing of the car when it knew or
should have known that financing had not yet been obtained
all in accordance with the yo-yo sales scheme as devised by
Tosch, Buchanan, Jenkins and Rosa.

97. Buchanan-Jenkins, Tosch, Buchanan, Jenkins and
Rosa willfully and fraudulently represented that plaintiff
had received approved financing in order to induce MITCHELL
to sign the contract, obtain insurance, and drive the car
away from the dealership believing the car to be owned by
her in accordance with the RISC.

98. Solely for the purpose of de-frauding plaintiff of
here down-payment money in accordance with the yo-yo sales
scheme devised by Tosch, Buchanan, Jenkins and Rosa.

99. Such misrepresentations were material.

100. Plaintiff relied upon the misrepresentations and
signed the contract, obtained insurance, paid the down-
payment and drove the car away from the dealership believing
the car to be owned by her in accordance with the RISC.

101. Such reliance by the plaintiff was justified.

102. Plaintiff suffered damages in the form of signing
a contract to which she was bound to make a down payment and
installment payments, obtaining insurance on a car that was
not hers and that she could not use, and believing the car
to be hers, tinted the windows, all in reliance on Buchanan-
Jenkins, Tosch, Buchanan, Jenkins and Rosa's
misrepresentations.

)                                    )

WHEREFORE, Plaintiff respectfully prays that this Court find the defendants Buchanan-Jenkins, Tosch, Buchanan, Jenkins and Rosa jointly and severally liable for the following damages:

  A.    award Plaintiff the ownership and use of the car, and require that the Defendant submit the proper paperwork to the state so Plaintiff can use the car;

  B.    award Plaintiff's costs and reasonable attorney's fees; and

  C. Punitive damages in the amount of $500,000.00

  D.    award such other relief as the Court deems appropriate.

### COUNT SEVEN: BREACH OF CONTRACT (DEFENDANT BUCHANAN-JENKINS).

103. Plaintiff realleges, reiterates, and restates Paragraphs 1-11

104. Plaintiff and Buchanan-Jenkins entered into a valid contract, agreeing that plaintiff would buy the car under the terms of the RISC and Buchanan-Jenkins would sell the car under the terms of the RISC.

105. Plaintiff, in accordance with the RISC, a valid contract, tendered as consideration a $2,725.00 down payment and security interest in the car.

106. Buchanan-jenkins agreed under the RISC, a valid contract, to provide ownership and use of the car to plaintiff and accept payments for the remainder of the balance due on the car.

)                                    )

107. The RISC, a valid contract, states that it contains "the entire agreement" between plaintiff and Buchanan-Jenkins.

108. Further the clause requires any modification to be in writing and signed by Buchanan-Jenkins the "bailment contract is not signed by Buchanan-Jenkins therefore cannot be a modification under the terms of the RISC ( see ex: I).

109. There are no conditions stated in the RISC.

110. In the alternative, any conditions that might have been conditions precedent had been met inasmuch as the RISC states that Buchanan-Jenkins is the Creditor and that financing is obtained under the terms disclosed by the Truth in Lending Act.

111. In the alternative, any conditions that might have been conditions precedent had been waived inasmuch as Buchanan-Jenkins electronically withdraw from Plaintiff's bank the remaining balance on her down payment the day after her credit was rejected by at least 8 lending institutions lending institutions.

A. Further conditions that might have been conditions precedent cannot be enforced due to the fact Buchanan-Jenkins was not properly licensed under Fla. Stat 520 et seq. (see ex: M ¶ 4 Defendant's answers to plaintiff's second request for admissions), further the condition is illegal under Fla. Stat. 520 et. seq and Fla. Stat. 501.976 et. seq

112. Buchanan-Jenkins breached the RISC by demanding the return of the car from plaintiff and refusing to accept further payments under the RISC.

108. Buchanan-Jenkins is in further breach of the RISC by failing to submit the proper paperwork to the state for title and tags for plaintiff.

113. Plaintiff, has been damaged as a result.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.    award Plaintiff the ownership and use of the car, and require that the Defendant submit the proper paperwork to the state so Plaintiff can use the car; and

B.    award Plaintiff costs and fees;

C.    award such other relief as the Court deems appropriate.

**COUNT EIGHT: VIOLATION OF FLORIDA'S MOTOR VEHICLE SALES FINANCE ACT AS TO THE RETAIL INSTALLMENT SALES CONTRACT (DEFENDANT BUCHANAN-JENKINS).**

114. Plaintiff, realleges, reiterates, and restates Paragraphs 1-11

115. The RISC, a valid contract, entered into by the parties to this suit is within the definition of a retail installment contract under Fla. Stat. § 520.02(14).

116. By failing to sign the RISC, Buchanan-Jenkins violated Fla. Stat. §520.07 (1)(a).

117. Buchanan-Jenkins further violated Fla. Stat. §520.07(1)(a) by failing to complete all essential provisions of the RISC and by failing to be properly licensed under the act.

)                              )

118. Buchanan-Jenkins further violated Fla. Stat. §520.07 (2) by failing to disclose the accurate financing terms

119.  Buchanan-Jenkins further violated Fla. Stat. §520.07 (3) by failing to provide separate written itemization of the amount financed.

120. Plaintiff, has been damaged as a result.

WHEREFORE, Plaintiff respectfully prays that this Court:

A.   award Plaintiff the ownership and use of the car, and require that the Defendant submit the proper paperwork to the state so Plaintiff can use the car;

B.   award  damages in the amount of  $4735.79 pursuant to Fla. Stat. §520.12(2);

C. Attorney's fees and costs pursuant to Fla. Stat. 520.12(2).

D.   award  such  other  relief  as  the  Court  deems appropriate.


**COUNT NINE: VIOLATION OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRATICES ACT (DEFENDANT BUCHANAN-JENKINS).**

121. Plaintiff, realleges, reiterates, and restates Paragraphs 1-11

122. This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. 501.976 Actionable, Unfair or deceptive acts or practices).

123. Plaintiff IS a "customer" as defined by Fla. Stat. 501.975(1).

124. Defendant Buchanan-Jenkins is a "dealer" as defined by Fla. Stat.501.975 (2)

125. The car is a "vehicle" as defined by Fla. Stat. 501.975(5).

126. Defendant Buchanan-Jenkins violated Fla. Stat. 501.976(9) by obtaining plaintiff's signature on a RISC that was not fully completed at the time the plaintiff signed and which did not fully and accurately reflect the negotiations between plaintiff and Buchanan-Jenkins, such deceptions are made to further the fraudulent yo-yo sales scheme devised by Tosch, Buchanan, Jenkins and Rosa.

WHEREFORE PLAINTIFF PRAYS FOR:

A. Actual damages in an amount to be proven at trial.

B.   Attorneys fees and costs pursuant to Fla. Stat 501.211(2)

C.   Any other relief this court deems appropriate.

**COUNT TEN: VIOLATION OF FLORIDA'S CONSUMER COLLECTION ACT(DEFENDANT BUCHANAN-JENKINS).**

127. MITCHELL realleges, reiterates, and restates Paragraphs 1 -11

128. The transaction between plaintiff and Buchanan-Jenkins is a consumer debt.

129. The personal property obtained was primarily for personal, family or household purposes.

130. Buchanan-Jenkins is a creditor as defined by the act.

131. Plaintiff and Buchanan-Jenkins had debtor-creditor relationship (see ex: C evidencing a $9,448.81 debt owed to Buchanan-Jenkins).

132. By using abrasive language, BUCHANAN JENKINS, through its employee, violated Fla. Sta. §559.72(8).

133. By threatening to maximize all fees personally, BUCHANAN JENKINS, through its employee, violated Fla. Sta. §559.72(9)

134. By threatening to repossession, BUCHANAN JENKINS, through its employee, violated Fla. Sta. §559.72(9).

135. As a consequence, MITCHELL suffered damages.

WHEREFORE, plaintiff prays for the following damages:

A. Actual damages in an amount to be determined at trial pursuant to Fla. Stat. 559.77(2).

B. Statutory damages in the amount of $1000.00 pursuant to Fla. Stat. 559.77(2).

)                              )

C.   Punitive   damages   in   the   amount   of $10,000.00 pursuant to Fla. Stat. 559.77(2).

D. Attorney's fees and costs pursuant to Fla. Stat. 559.77(2).

E. Any other relief the Court deems just and equitable.

**COUNT ELEVEN: VIOLATION OF THE TRUTH IN LENDING ACT, 15 USC 1638 AND THE REGULATIONS PROMULGATED THEREUNDER FAILURE TO MARK DISCLOSURES GIVEN ON JULY 5, 2003 AS ESTIMATES. (DEFENDANT BUCHANAN-JENKINS).**

136. Plaintiff realleges, reiterates and restates paragraphs 1-11.

137. This action is against defendant Buchanan-Jenkins for actual damages pursuant to 15 USC §1640(1) and statutory damages pursuant to 15 USC §1640(2)(A)(i) for violations of 15 USC 1638. Based on Buchanan-Jenkins failure to mark the disclosures given on July 5, 2003 as estimates.

138. The transaction between plaintiff and Buchanan-Jenkins was a sale by a creditor whereby plaintiff agreed to pay as compensation for the use of the property a sum substantially equal to or in excess of the aggregate value of the property and it was agreed that the plaintiff would become the owner of the property upon full compliance with

her obligations under the contract. Pursuant to 15 USC 1602(g).

139. Buchanan-Jenkins is a person that regularly extends consumer credit which is payable by agreement in more than four installments or for which a finance charge is or may be required and is the person to whom the debt arising from the consumer credit transaction is initially payable to on the face of the indebtedness. Pursuant to 15 USC 1602(f)

140. Plaintiff intended to obtain the property for primarily personal, family or household purpose. Pursuant to 15 USC 1602(h).

141. Buchanan-Jenkins attempted to subject the RISC to a condition precedent(see ex: I) .

142. By attempting to condition the RISC to a condition precedent Buchanan-Jenkins was unaware of the true consummation date.

143. Despite not knowing the true consummation date which is necessary to determine the Annual Percentage Rate (APR) Buchanan-Jenkins gave TILA disclosures (see ex: C).

144. Such disclosures used the date of July 5, 2003 as the commencement of the term for purposes of calculating the APR, thus attempting to charge interest for the period of time the plaintiff was not obligated.

)                                    )

145. Using the period of time upon which the plaintiff was not obligated to calculate the APR is barred by 12 CFR Part 226 App J (B)(2).

146. Since Buchanan-Jenkins did not know the actual date of consummation and Buchanan-Jenkins used July 5, 2003 as the beginning date of the transaction, which is a date before consummation, since Buchanan-Jenkins attempted to subject the RISC to a condition precedent, the disclosures given were required to marked as estimates pursuant to 12 CFR § 226.17 (2)(i)

147. Buchanan-Jenkins failed to mark such disclosures as estimates (see ex: C).

148. Buchanan-Jenkins failure to mark the disclosures as estimates rendered the disclosures inaccurate inasmuch Buchanan-Jenkins attempted to collect interest on a period of time prior to consummation and such action is barred by 12 CFR Part 226 App J (B)(2).

149. Plaintiff suffered damages as a result of Buchanan-Jenkins failure to mark such disclosures as estimates.

WHEREFORE, plaintiff prays for the following

A. Actual damages in an amount to be determined at trial pursuant to 15 USC 1640(1).

B. $9471.59 pursuant to 15 USC 1640 (2)(A)(i)

C. Attorney fees and costs pursuant to 15 USC 1640(3)

D. Any other such relief this Court deems just and equitable.


**JURY DEMAND**

Plaintiff hereby demands a trial by jury.


**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy hereof has been furnished to John L. Morrow, Two South Orange Ave. Suite 300 Orlando, Florida 32801 April 22, 2004.

By: _____

Todd R. Perkins
1001 Third Ave West
Suite 480
Bradenton FL 34205
941 746 0234



EX. A-1





# BUCHANAN-JENKINS HYUNDAI

## MANATEE & SARASOTA'S #1 VOLUME DEALER!

# LOOK!
# 5000
*match or discount*
## This Weekend Only

**2003 HYUNDAI SONATA**



RETAIL LIST $18,488
TOTAL VALUE -$4,000
DISCOUNT TRADE -$4,000
**$10,499**

**NOT ONLY WILL BUCHANAN-JENKINS HYUNDAI MATCH YOUR TRADE OR DOWN PAYMENT BUT WE WILL ACCEPT ANY REASONABLE OFFER!**

**2003 HYUNDAI SANTA FE**

RETAIL LIST $21,888
TOTAL VALUE -$4,000
DISCOUNT TRADE -$4,000
**$13,999**

**2003 HYUNDAI ELANTRA**



RETAIL LIST $14,888
TOTAL VALUE -$4,000
DISCOUNT -$4,000
**$6,999**



**2003 HYUNDAI ACCENT**

RETAIL LIST $12,888
TOTAL VALUE -$4,000
DISCOUNT -$4,000
**$4,999**

**2004 HYUNDAI XG350**

RETAIL LIST $27,888
TOTAL VALUE -$5,000
DISCOUNT -$4,900
**$17,999**



**TAKE THE $100 TEST DRIVE!**
THAT'S RIGHT, WE'LL GIVE YOU $100 TO TEST DRIVE ANY NEW BUCHANAN-JENKINS HYUNDAI BEFORE YOU BUY ANOTHER NEW AUTOMOBILE

**Florida's Largest Hyundai Dealership!**

# BUCHANAN-JENKINS HYUNDAI

2003 1st Street E. Bradenton
SALES HOURS: MON-FRI 8AM-9PM
SAT 8AM-8PM • SUN 11AM-6PM
**841-747-9282**

**1-877-456-CARS**





# BUCHANAN-JENKINS HYUNDAI

## MANATEE & SARASOTA'S #1 VOLUME DEALER!

FREE TIRES FOR LIFE

**LOOK!**

FREE TIRES FOR LIFE

0% APR FINANCING AVAILABLE ON SELECT MODELS

### NOT ONLY WILL BUCHANAN-JENKINS HYUNDAI MATCH YOUR TRADE OR DOWN PAYMENT

**$3500**

BUT WE WILL ACCEPT ANY REASONABLE OFFER!

**2003 HYUNDAI SONATA**
MSRP LIST $18,499
TRADE CASH OR DOWN MATCH -$3,500
BUCHANAN-JENKINS MATCH IN LOYALTY -$3,500
**$11,499**

**2003 HYUNDAI SANTA FE**
MSRP LIST $21,999
TRADE CASH OR DOWN MATCH -$3,500
BUCHANAN-JENKINS MATCH IN LOYALTY -$3,500
**$14,999**

**2003 HYUNDAI ELANTRA**
MSRP LIST $14,999
TRADE CASH OR DOWN MATCH -$3,500
BUCHANAN-JENKINS MATCH IN LOYALTY -$3,500
LOYALTY CASH -$500
**$7,499**

**2003 HYUNDAI ACCENT**
MSRP LIST $12,999
TRADE CASH OR DOWN MATCH -$3,500
BUCHANAN-JENKINS MATCH IN LOYALTY -$3,500
**$5,999**

**2003 HYUNDAI XG350**
MSRP LIST $27,999
TRADE CASH OR DOWN MATCH -$3,500
BUCHANAN-JENKINS MATCH IN LOYALTY -$3,500
LOYALTY CASH -$1,000
**$19,999**

### TAKE THE $100 TEST DRIVE!
THAT'S RIGHT, WE'LL GIVE YOU $100 TO TEST DRIVE ANY NEW BUCHANAN-JENKINS HYUNDAI BEFORE YOU BUY ANOTHER NEW AUTOMOBILE***

*Florida's Largest Hyundai Dealership!*

## BUCHANAN-JENKINS HYUNDAI
WWW.BUCHANAN-JENKINSHYUNDAI.COM

2503 1st Street E. Bradenton
SALES HOURS: MON-FRI 8AM-8PM
SAT 8AM-6PM • SUN 11AM-5PM
**941-747-8262**

WE'RE LOOKING FOR GOOD PEOPLE WITH CREDIT PROBLEMS!
BANKRUPTCIES, DIVORCE, REPOSSESSIONS, SLOW PAY, LIENS, CHARGE OFF, ETC

GET PRE-APPROVED TODAY!
**1-877-456-CARS**

## FISH, LIME, SUBLIME

The Latin American technique of ceviche is fast becoming a popular seafood selection.



### Their time has come

For years, C.J. Hannekrutt, left, and his friends dreamed of playing football for Manatee High. The dreams have come true.

SPORTS, 1B

### Eyes on the Tigers

The Palmetto High volleyball team ready to win over area.

SPORTS, 1B





Ex: A-6

# JENKINS HYUNDAI

**HYUNDAI**

BUCHANAN·JENKINS

# OUR SUMMER SELL-DOWN!

2003 HYUNDAI SONATA
**$15,494**
After $1000 Factory Rebate

2003 HYUNDAI ELANTRA GT
**$12,994**
After $1500 Factory Rebate



HYUNDAI SONATA vs. TOYOTA CAMRY

HYUNDAI ELANTRA GT vs. VOLKSWAGEN GOLF

2003 HYUNDAI XG350
**$21,499**
After $2000 Factory Rebate

2003 HYUNDAI SANTA FE
**$18,489**
After $1000 Factory Rebate




HYUNDAI XG350 vs. TOYOTA AVALON

HYUNDAI SANTA FE vs. TOYOTA HIGHLANDER

2003 HYUNDAI ELANTRA GLS
**$11,294**
After $1500 Factory Rebate

2003 HYUNDAI ACCENT
**$7994**
After $1000 Factory Rebate

HYUNDAI ELANTRA GLS vs. HONDA CIVIC

HYUNDAI ACCENT vs. TOYOTA ECHO

# YOUR HYUNDAI IS HERE!

GET PRE-APPROVED TODAY!

## 1-877-456-CARS

THE HYUNDAI ADVANTAGE
America's Best Warranty
POWERTRAIN 10yr/100,000 mile
BUMPER TO BUMPER 5yr/60,000 mile
ROADSIDE ASSISTANCE 5yr/Unlimited mile



503 1st Street E. In Bradenton
SALES HOURS: MON-FRI 9AM-8PM
SAT 9AM-6PM • SUN 11AM-5PM

## 941-747-9262

JENKINSHYUNDAI.COM

MANATEE AVE. W
14TH ST. • 1ST STREET • 301
CORTEZ RD.
BUCHANAN JENKINS HYUNDAI
41 STATE RD. 70



|                        |          |
|------------------------|----------|
| Balance ($):           | $0       |
| Current:               | 0        |
| Delinquent:            | 1        |
| Other:                 | 2        |
|                        |          |
| Count:                 | 17       |
| Balance ($):           | $9,815   |
| Current:               | 0        |
| Delinquent:            | 17       |
| Other:                 | 0        |
|                        |          |
| Count:                 | 38       |
| Balance ($):           | $127,963 |
| Current:               | 11       |
| Delinquent:            | 24       |
| Other:                 | 3        |
|                        |          |
| Open Accounts:         | 25       |
| Closed Accounts:       | 13       |
| Public Records:        | 1        |
| Inquires (Prev 6 Months): | 17    |

^Top of Page^

The information in this section comes from federal district bankruptcy records, state and county court records, tax liens and monetary judgments, and in some states, overdue child support records. Public records remain on your credit report for 7-10 years.

| | Equifax | Experian | TransUnion |
|---|---|---|---|
| | Bankruptcy: CH-13 Filed | | |
| Date Filed: | Mar 1, 2002 | | |
| Reference #: | 0203421 | | |
| Court: | US DIST CT | | |
| Plaintiff: | N/A | | |
| Liability: | $0 | | |
| Asset Amount: | $0 | | |

See all 3 of your credit reports in 1!
Plus, get your FREE Credit Score!
**Order Now!**

^Top of Page^

This section contains the names of those who obtained a copy of your credit report. Inquiries remain on your report up to two years.



| | Equifax | Experian | TransUnion |
|---|---|---|---|
| Miscellaneous Jul 22, 2003 | ✓ | (8/22) | |
| Auto Financing Jul 7, 2003 | ✓ | | |
| Personal Loans Cos. Jul 7, 2003 | ✓ | | |
| Auto Financing Jul 7, 2003 | ✓ | | |
| Auto Financing Jul 7, 2003 | ✓ | | |
| Auto Financing Jul 7, 2003 | ✓ | | |
| Auto Financing Jul 7, 2003 | ✓ | | |
| Auto Financing Jul 7, 2003 | ✓ | | |
| Automobile Dealers, New Jul 5, 2003 | ✓ | | |

See all 3 of your credit reports in 1!
Plus, get your FREE Credit Score!
**Order Now!**

EX:B

of 15

8/2/2003 7:45 PM

LAW 553-FL 3/03

Ptg. 4/03

## RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

AL NO.   16520
OCK NO.  Y3217

Dealer Number                                    Contract Number

er (and Co-Buyer) Name and Address (Including County and Zip Code)     Creditor-Seller (Name and Address)

MELISSA MITCHELL                                 BUCHANAN JENKINS HYUNDAI OF
17 NEPTUNE LN #E                                 BRADENTON
HOLMES BCH FL 34217 COUNTY:MANATEE               2503 1ST STREET
                                                 BRADENTON FL 34208

er's Month of Birth:
              APRIL

the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle
credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this
ract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily
s at the Base Rate of 17.07 % per year. The Truth-In-Lending Disclosures below are part of this contract.

| v/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2003 | HYUNDAI ACCENT | | KMHCF35C23U265981 | XX personal, family or household<br>☐ business<br>☐ agricultural   ☐ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $3725.00 |
|---|---|---|---|---|
| 17.07 % | $ 4735.79 | $ 9448.81 | $ 14184.60 | $ 17909.60 |

**ur Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 236.41 | Monthly beginning 08/16/2003 |

r As Follows:

ate Charge. If payment is not received in full within ___10___ days after it is due, you will pay a late charge
f ___5___ % of the part of the payment that is late.

repayment. If you pay off all your debt early, you may have to pay a penalty.

ecurity Interest. You are giving a security interest in the vehicle being purchased.

dditional Information: See this contract for more information including information about nonpayment,
efault, prepayment penalties, any required repayment in full before the scheduled date and security interest.

**EMIZATION OF AMOUNT FINANCED**

| | | |
|---|---|---|
| Cash Price (including $ 727.94 sales tax) | $ 12437.06 | (1) |
| Total Downpayment = | | |
| Trade-In | | |
| (Year)   (Make)   (Model) | | |
| Trade-In | | |
| (VIN) | | |
| Gross Trade-In Allowance | $ N/A | |
| Less Pay Off Made By Seller | $ N/A | |
| Equals Net Trade In | $ N/A | |
| + Cash | $ 2725.00 | |
| + Other   REBATE | $ 1000.00 | |
| (If total downpayment is negative, enter "0" and see 4H below) | $ 3725.00 | (2) |
| Unpaid Balance of Cash Price (1 minus 2) | $ 8712.06 | (3) |

Other Charges Including Amounts Paid to Others on Your Behalf
(Seller may keep part of these amounts):
Paid to the Insurance

**Insurance.** You may buy the physical damage insur-
ance this contract requires (see back) from anyone
you choose who is acceptable to us. You are not
required to buy any other insurance to obtain credit.
Your choice of insurance providers will not affect our
decision to sell or extend credit to you.
      If any insurance is checked below, policies or
certificates from the named insurance companies will
describe the terms and conditions.

**Check the insurance you want and sign below:**

**Optional Credit Insurance**

☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability (Buyer Only)
Premium:

Credit Life $ _____   N/A

Credit Disability $ _____   N/A

Insurance Company Name
N/A

Home Office Address   N/A

Credit life insurance and credit disability insurance are not
required to obtain credit. They will not be provided unless you
sign and agree to pay the extra cost. If you choose this
insurance, the cost is shown in Item 4A of the Itemization of
Amount Financed. Credit life insurance is based on your orig-
inal payment schedule. This insurance may not pay all you
owe on this contract if you make late payments. Credit disability
insurance does not cover any increase in your payment or in
the number of payments. Coverage for credit life insurance
and credit disability insurance ends on the original due date
for the last payment unless a different term for the insurance is
shown below.

If the box above is checked to indicate that you want credit life
insurance, please read and sign the following acknowledgments:
1. You understand that you have the option of assigning any
other policy or policies you own or may procure for the purpose
of covering this extension of credit and that the policy need not
be purchased from us in order to obtain the extension of credit

Buyer _____  Date _____

Co-Buyer _____  Date _____

2. You understand that the credit life coverage may be
deferred if, at the time of application, you are unable to engage
in employment or unable to perform normal activities of a
person of like age and sex. (You need not sign this acknowl-
edgement if the proposed credit life insurance policy does not
contain this restriction.)

```
                              GAP        $    49J.00
                    axes         $        33.25
             C  Office          $         N/A
             D ion Fees
             E                  $       200.00
             F                  $         N/A
```

o is paid and

```
              it or Lease Balance   $      N/A
                                    $      N/A
             \ERY/TIRE/MVWRF  $       8.50
                                    $      N/A
                             $       -  N/A
          A                  $         N/A
    /A                       $         N/A
    N/A                      $         N/A
```

nts Paid to Others on Your Behalf   $   736.75 (4)
er (Prepaid Finance Charge)         $     N/A  (5)
                                    $  9448.81 (6)
installments of $   236.41  each, monthly beginning  08/16/2003

You understand that the benefits under the policy will ter-...nate when you reach a certain age and affirm that your age is accurately represented on the application or policy.

Buyer _____ Date _____

Co-Buyer _____ Date _____

**Other Insurance**

☒XX GAP                                    **60**
Type of Insurance                          Term

Premium $          **495.00**

Insurance Company Name
**JM&A**

Home Office Address   PO BOX 9410
**DEERFIELD BEACH, FL 33443**

I want the insurance checked above.

*Melissa Mitchell*                 07/05/03
Buyer Signature                         Date

Co-Buyer Signature                      Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

**Returned Check Charge:** If any check or order of payment you give us is dishonored, you will pay a charge if we make demand that you do so. The charge will be $25 if the check amount is $50 or less; $30 if the check is over $50 but not more than $300; $40 if the check amount is over $300, or such amount as permitted by law.

ou pay no finance charge if the amount financed, item 6, is paid in full on or before     N/A     , Year _____ . SELLERS INITIALS

## NO COOLING OFF PERIOD

aw does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, nay only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because change your mind. This notice does not apply to home solicitation sales.

W THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this ntract must be in writing and we must sign it. No oral changes are binding. If any part of this contract is not valid, all other parts stay valid. We may delay refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments thout extending the time for making others. Buyer (and any Co-Buyer) initials *MM* ee back for other important agreements.

OTICE TO THE BUYER: a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are ntitled to an exact copy of the contract you sign. Keep it to protect your legal rights.

ou agree to the terms of this contract and confirm that you received a completely filled-in copy when you signed it.

uyer Signs *Melissa Mitchell* Date **07/05/03** Co-Buyer Signs _____ Date _____

-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but es not have to pay the debt. The co-buyer or other owner knows that the Creditor has a security interest in the vehicle and consents to the security interest.

her owner signs here _____  Address _____
eller signs _____ Date **07/05/03** By _____  Title _____

eller assigns its interest in this contract to _____  (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse            ☒XX Assigned without recourse            ☐ Assigned with limited recourse

eller  **BUCHANAN JENKINS HYUNDAI OF BRADENTON**                   By _____                Title ____

W FORM NO. 553-FL (REV. 9/03) U.S. PATENT №5,042,967
©2003 Reynolds and Reynolds TO ORDER www...ce.com, 1-800-344-0996, fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**ORIGINAL LIENHOLDER**

**BUCHANAN/JENKINS HYUNDAI**
2503 41st Street E.  Bradenton, FL.    8  941-747-9262

PURCHASER **MELISSA MITCHELL**

CO-PURCHASER

ADDRESS **117 NEPTUNE LN #E**        **HOLMES BCH**   CITY **MANATEE**   STATE     **34217**

HOME PHONE **(941)778-3743**    BUSINESS PHONE **(941)798-6270**   SALES PERSON **262 ROGER D RIFLE**

STOCK NO **4217**   DEAL NO **16520**   DATE **05/05/2003**
DRIVER LICENSE NO. **360122A74**   S/C **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**
DRIVER LICENSE NO.
DATE OF BIRTH
SOC. SECURITY NO.

I (we) hereby order from you, subject to all items, conditions and agreements contained herein, and the
ADDITIONAL CONDITIONS printed on the reverse side hereof, the following:

MVI/SERIAL NO **KMHGC35C23U265981**   MILEAGE **9**

☐ NEW  ☐ CAR
☐ USED  ☐ TRUCK
☐ DEMO  ☐ OTHER
YEAR **2003**  MAKE **HYUNDAI**  MODEL **TIBURON**   BODY **2DR PRB CPE L**  COLOR **SILVER MIST**   TO BE DELIVERED **05/05/2003**

## TRADE-IN DESCRIPTION & LIEN DISCLOSURE

| YEAR | MAKE | MODEL |
|---|---|---|
| SERIAL NO | | |
| LICENSE NO. | EXPIRATION | MILEAGE  N/A |
| NET AMOUNT OF LIEN  N/A | OWED TO | |

## TRADE-IN DESCRIPTION & LIEN DISCLOSURE

| YEAR | MAKE | MODEL |
|---|---|---|
| SERIAL NO | | |
| LICENSE NO. | EXPIRATION | MILEAGE  N/A |
| NET AMOUNT OF LIEN  N/A | OWED TO | |

TERM:  60

The vehicle I am trading in (has) [ ] has not [ ], to the best of my knowledge, been in any accident with damages that have exceeded $500.

X

TOTAL SALES PRICE reflects all discounts and credits from any and all offers or promotions made by dealer or authorized representatives.

The motor vehicle described above is subject to the disclosure listed below by Florida Law, Chapter 319.14, F.S. The required disclosure is applicable to a selling motor vehicle dealer (transferor) or to a person (transfer) selling their vehicle or trading the vehicle to a motor vehicle dealer. The disclosure applies to wholesale and retail transactions. "Person" includes an individual, a business, or a licensed motor vehicle dealer.

Disclosure: _____
(Police vehicle, Lease vehicle, Rebuilt vehicle, Taxicab, Assembled from parts, Combined, Kit car, Glider kit, Replicar, Flood vehicle)

(X)

* DEALER SERVICES
This charge represents costs and profit to the seller/dealer for items such as inspecting, cleaning and adjusting new and used vehicles and preparing documents related to the sale.
TAG & TITLE FEES are an ESTIMATE.
Customer pays actual fees charged by the Department of Motor Vehicles which may vary from the estimate collected.

X _____
Purchaser's Signature

### TERMS OF SETTLEMENT

| | |
|---|---|
| TOTAL SALE PRICE | 11240. |
| LESS DISCOUNT & TRADE-IN ALLOWANCE | 11240. |
| NET DIFFERENCE | N |
| | N |
| | N |
| | N |
| | N |
| | N |
| | N |
| | N |
| EXTENDED WARRANTY | N |
| FLORIDA WASTE TIRE & BATTERY | 6. |
| DEALER SERVICES | 468.50 |
| TAXABLE SUB TOTAL | 11715. |
| STATE TAX | 702. |
| COUNTY TAX | 25. |
| LUXURY TAX | N |
| ESTIMATED TAG TITLE FEES | 202. |
| PAYOFF LIEN ON TRADE-IN | |
| BALANCE DUE | 12645.5 |
| DEPOSIT  CR. CARD ☐ | N |
| CASH ☐     CHECK ☐ | |
| CASH DOWN ON DELIVERY | 2725. |
| REBATE | 1000. |
| PAYABLE ON DELIVERY | 3725. |
| BALANCE FINANCED SUBJECT TO APPROVAL | 8920. |
| GAP | 495. |
| TOTAL BALANCE DUE  $ | 9415. |

IF THIS CONTRACT INVOLVES A USED VEHICLE THE INFORMATION YOU SEE ON THE (FEDERAL TRADE COMMISSION) WINDOW FORM IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE

This motor vehicle is sold "AS IS". The Selling Motor Vehicle Dealer makes no warranties, representation or assurances that the motor vehicle contains only original manufacturer installed or manufacturer rebuilt components, parts or accessories. I hereby acknowledge that I have agreed to purchase the motor vehicle after having read and considered the above disclosure.

☐ I WAIVE my rights to obtain title for and Dis
establish insurance

X _____
Purchaser

ACCEPTED BY   435

PURCHASER'S APPROVAL

CO-PURCHASER'S APPROVAL

Purchaser acknowledges delivery, examination and acceptance of said vehicle in its present condition. This constitutes the entire contract and no waivers or modifications shall be valid unless written upon or attached to this contract, and said vehicle is accepted without any express or implied warranties, Agreements, representations, promises or assurances, unless expressly set forth in writing in this contract at the time of purchase are not valid or binding. Purchaser acknowledges additional conditions printed on the reverse side hereof.

Purchaser (✓) _____

DEALER OR HIS AUTHORIZED REPRESENTATIVE

### INSURANCE INFORMATION

NAME OF INSURANCE COMPANY

POLICY NO.   EXPIRY DATE

NAME OF AGENT   TELEPHONE **(941)758-995**

EX:D

NOTICE TO THE PURCHASER: Do not sign this order before you read it or if it contains any blank spaces. You are entitled to an exact copy of the order you sign. PURCHASER ACKNOWLEDGES he has read and received, completed copy of this order comprising the entire agreement affecting his purchase and that this order is subject to Purchaser's satisfactory credit rating. PURCHASER CERTIFIES he is of legal age to execute binding contracts in this State, and no credit has been extended except as appears above.

## DIVISION OF MOTOR VEHICLES
Neil Kirkman Building • Tallahassee, Florida 32399-0610

## SEPARATE ODOMETER DISCLOSURE STATEMENT AND ACKNOWLEDGEMENT
(Instructions on Reverse Side)

### VEHICLE DESCRIPTION

CHECK ONE: ☒ Motor Vehicle ☐ Mobile Home ☐ Vessel

| Vehicle Identification Number | Year | Make | Color | Body | Title No |
|---|---|---|---|---|---|
| KMHCF35C23U265981 | 2003 | HYUNDAI | SILVER | 3DR HB | |

WE _____ STATE THAT THIS MOTOR VEHICLE'S

BUCHANAN JENKINS HYUNDAI OF
BRADENTON
(Print Transferor's Name) (Seller)

☐ 5 DIGIT or ☐ 6 DIGIT ODOMETER NOW READS [ ][ ][ ][ 9 ][ XX ] (NO TENTHS)

MILES, DATE READ  05/03  AND TO THE BEST OF MY KNOWLEDGE THAT IT
REFLECTS THE **ACTUAL MILEAGE** OF THE VEHICLE DESCRIBED IN THIS DOCUMENT
UNLESS ONE OF THE FOLLOWING IS CHECKED:

**CAUTION:**
☐ 1. I HEREBY CERTIFY THAT, TO THE BEST OF MY KNOWLEDGE, THE
ODOMETER READING REFLECTS THE AMOUNT OF MILEAGE IN
**DO NOT CHECK** EXCESS OF ITS MECHANICAL LIMITS.

☐ 2. I HEREBY CERTIFY THAT THE ODOMETER READING IS NOT THE
**IF ACTUAL** ACTUAL MILEAGE. WARNING - ODOMETER DISCREPANCY
**MILEAGE**

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOC-
UMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

_(signature)_
(Transferor's Signature) (Seller)

BUCHANAN JENKINS HYUNDAI OF
BRADENTON
(Transferor's Hand Printed Name)

2503 1ST STREET
(Transferor's Street Address)

BRADENTON FL 34208
(City)          (State)          (Zip)

## ODOMETER DISCLOSURE STATEMENT

**WARNING:** Federal and State law requires that you state the mileage in connection with an application
for a Certificate of Title. Failure to complete or providing a false statement may result in fines and/or
imprisonment.

_(signature)_
(Transferee's Signature) (Buyer)

MELISSA MITCHELL
(Transferee's Hand Printed Name)

117 NEPTUNE LN #E
(Transferee's Street Address)

HOLMES BCH FL 34217
(City)          (State)          (Zip)

HSMV 82993 (Rev. 8/01) S

EX: 3

---

### CERTIFICATION OF POLLUTION CONTROL DEVICES OR SYSTEMS

| CUSTOMER'S NAME | | STOCK NO |
|---|---|---|

FLORIDA LAW PROHIBITS THE OPERATION, SALE LEASE, OR TRANSFER OF TITLE OF ANY AUTOMOBILE OR LIGHT
DUTY TRUCK (VEHICLE 1975 OR NEWER WITH A REGISTERED WEIGHT 10,000 lbs OR LESS) THAT HAS BEEN
TAMPERED WITH. TAMPERING IS DEFINED AS THE DISMANTLING, REMOVAL OR RENDERING INEFFECTIVE OF ANY AIR
POLLUTION CONTROL DEVICE OR SYSTEM WHICH HAS BEEN INSTALLED ON A MOTOR VEHICLE BY THE MANU-
FACTURER EXCEPT TO REPLACE SUCH DEVICE OR SYSTEM WITH A DEVICE OR SYSTEM EQUIVALENT IN DESIGN
AND FUNCTION TO THE PART THAT WAS ORIGINALLY INSTALLED ON THE MOTOR VEHICLE (316 2935, F.S.)

### VEHICLE DESCRIPTION

CHECK ONE: ☐ Motor Vehicle ☐ Mobile Home ☐ Vessel

| Vehicle Identification Number | Year | Make | Color | Body | Title No |
|---|---|---|---|---|---|
| KMHCF35C23U265981 | 2003 | HYUNDAI | SILVER | 3DR HB | |

RULE 62-242.700 FLORIDA ADMINISTRATIVE CODE

AS A MOTOR VEHICLE DEALER LICENSED TO CONDUCT BUSINESS IN THE STATE OF FLORIDA, I HEREBY
CERTIFY THAT THE FOLLOWING AIR POLLUTION EMISSION CONTROL DEVICES AND SYSTEMS OF THE
VEHICLE, IF INSTALLED BY THE VEHICLE MANUFACTURER OR IMPORTER, HAVE NOT BEEN TAMPERED WITH
BY ME OR MY AGENTS, EMPLOYEES OR OTHER REPRESENTATIVES

I ALSO HEREBY CERTIFY THAT I OR PERSONS UNDER MY SUPE... ... I HAVE INSPECTED THIS MOTOR
VEHICLE AND BASED ON SAID INSPECTION HAVE DETERMINED ... BELOW-LISTED AIR POLLUTION
CONTROL DEVICES OR SYSTEMS AS INSTALLED BY THE VEHICLE ... ON, IMPORTER, APPEAR TO BE IN
PLACE AND APPEAR TO BE PROPERLY CONNECTED AND UNDAMAGED AS DETERMINED BY VISUAL
OBSERVATION.

THIS CERTIFICATION SHALL NOT BE DEEMED OR CONSTRUED AS A WARRANTY THAT ANY AIR POLLUTION
CONTROL DEVICE OR SYSTEM OF THE VEHICLE IS IN FUNCTIONAL CONDITION. NOR DOES THE EXECUTION
OR DELIVERY OF THIS CERTIFICATION CREATE BY ... SELF GROUNDS FOR CAUSE OF ACTION BETWEEN THE
PARTIES TO THIS TRANSACTION.

X _____
(Transferor's Signature)

BUCHANAN JENKINS HYUNDAI OF BRADENTON
PRINTED NAME

2503 1ST STREET
TRANSFEROR'S ADDRESS (STREET)

BRADENTON                    FL        34208
CITY                         STATE     ZIP CODE
                             FIRM/DEALERSHIP

DATE OF STATEMENT  07/05/2003

X _(signature)_
TRANSFEREE'S SIGNATURE

MELISSA MITCHELL
PRINTED NAME

MELISSA MITCHELL
TRANSFEREE'S NAME

117 NEPTUNE LN #E
TRANSFEREE'S ADDRESS (STREET)

HOLMES BCH                   FL        34217
CITY                         STATE     ZIP CODE

**1990 AND NEWER YEAR:** (CHECK ONLY ONE OF THE FOLLOWING COLUMNS)
☐ CATALYTIC CONVERTER
☐ UNVENTED FUEL CAP
☐ POSITIVE CRANKCASE VENTILATION SYSTEM (PCV)
☐ THERMOSTATIC AIR CLEANER (TAC)
☐ EXHAUST GAS RECIRCULATION SYSTEM (EGR)

**1975 TO 1979 YEAR:**
☐ CATALYTIC CONVERTER
☐ UNVENTED FUEL CAP

STK# Y3217
DL# 16520

STATE OF FLORIDA
DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES
DIVISION OF MOTOR VEHICLES
Neil Kirkman Building - Tallahassee, Florida 32399

## APPLICATION FOR TEMPORARY LICENSE PLATE

TEMPORARY LICENSE PLATE NUMBER   F959823

THIS IS TO CERTIFY THAT   MELISSA MITCHELL

117 NEPTUNE LN #E HOLMES BCH FL 34217

(Street and Number)   (Post Office)   (City)   (State)   (Zip)

HAS MADE APPLICATION FOR AND HAS BEEN ISSUED A TEMPORARY

LICENSE PLATE ON   JUL   5th   2003   **NOT VALID AFTER**
                    (Month)  (Day)  (Year)

AUG   3rd   2003   FOR THE FOLLOWING MOTOR VEHICLE:
(Month)  (Day)  (Year)

2003 HYUNDAI ACCENT   SILVER M   KMHCF35C23U265981

(Make of Vehicle)   (Type)   (Color)   (Identification Number)

DEALER # Y1911
BUCHANAN JENKINS HYUNDAI OF BRADENTON
BY
(Name of Issuing Agency/Dealer & Dealer's License #, If Applicable)

2503 1ST STREET BRADENTON FL 34208

(Address of Issuing Agency/Dealer)

### AUTHORIZED ISSUING AGENCY USE ONLY

☐   Mark Box, if this temporary license plate will be used solely for
demonstration purposes

☐   Mark Box, if this temporary license plate will be used solely for
the delay in the manufacture of a personalized license plate

☐   Mark Box, if this temporary license plate will be used solely for
other purposes, please explain: _____

Signature of the Applicant  _Melissa Mitchell_

## INSTRUCTIONS

The original (accurately completed) copy (White) of this form must be given to the
APPLICANT. This form is issued to the applicant as a temporary permit and must be
carried in his/her possession at all times while the vehicle is being operated with the
temporary license plate (until expiration).

THE TEMPORARY LICENSE PLATE MUST BE DESTROYED WHEN:

   1. The regular license plate is received by the applicant.
   2. The temporary license plate expires.

The Duplicate Copy (Yellow) of this form must be retained by the authorized issuing
agency for at least one (1) year.

WARNING: Any person unlawfully using any such temporary license plate or violating
any rule or regulation issued by the Division of Motor Vehicles pursuant to this act shall
be guilty of a misdemeanor of the second degree.

   Original (White): Applicant   Duplicate (Yellow): Issuing Agency

HSMV 83091 (Rev. 12/01) S

EX: F



| | 24/7 | Customer Service & Claims Handling | Call 1-800-926-6012 |

▶ **Summary of Policy**                    view documents   view billing   🖶 Print

**Named Insured:** melissa a mitchell                **Term Effective Date:** 7/5/2003
**Policy #:** PAFL 000902933                    **Term Expiration Date:** 1/5/2004
**Policy Term:** 6 months                        **Last Endorsement Date:** 7/5/2003
**Billing Term:** 1 month                        **Premium:** $1,189.00

**Contact Information**
                                    Update email/account info   **edit**
**Street:** 117 neptune lane apt E
**City:** HOLMES BEACH                    **Email:** mmitch5263@netscape.net
**State:** FL                            **Day Phone:** (941) 778-3743
**ZIP Code:** 34217                        **Evening Phone:** (941) 778-3743
                                    **Preferred Contact Method:** Day

**Account Information**
                                    view\update payment info
**Account Holder Name:** kurt mitchell            **Account Address:** 117 neptune lane apt E
**Payment Plan:** Monthly payment            **City:** HOLMES BEACH
**Payment Type:** Checking                    **State:** FL
                                    **Zip Code:** 34217

**Driver #1**
                                    add another driver   **edit**
**Named Insured:** melissa a mitchell            **Driver's License #:** MI m324599067301
**Street:** 117 neptune lane apt E            **Occupation:** Other
**City:** HOLMES BEACH                    **Marital Status:** M
**State:** FL                            **Gender:** F
**Zip Code:** 34217                        **Date of Birth:** 4/22/1974
**Age first licensed:** 16

**Discounts**                            update discounts
**None**

**Driver #2**
                                    add another driver   **edit**   **delete**
**Named Insured:** kurt d mitchell            **Driver's License #:** FL m324504740470
**Street:** 117 neptune lane apt E            **Occupation:** Other
**City:** HOLMES BEACH                    **Marital Status:** M
**State:** FL                            **Gender:** M
**Zip Code:** 34217                        **Date of Birth:** 2/7/1974
**Age first licensed:** 16

**Discounts**                            update discounts
**None**

**Vehicle #1**
                                    add another car   **edit**
**Year:** 2003
**Make:** Hyundai                        Primary driver of car: melissa mitchell

**EX:G**

Model: ACCENT L
Body Style: Hatchback 2 Door
VIN: KMHCF35C23U265981
Years of continuous insurance: 0

Ownership status: Financed
Night parking zip code: 34217

## Discounts
None

update discounts

## Finance/Lease

edit

Lienholder/Lessor name: regional acceptance
Address: 33859 us hwy 19 n
City: palm harbor
State: FL
Zip Code: 34684

Year: 2003
Make: Hyundai
Model: ACCENT L
Lease/Loan #: 1

Paid off Loan | Change Loan to Lease

## Car/Driver Matching

edit

**2003 Hyundai**
Primary Driver:  melissa mitchell

## Policy Coverages and Limits

edit

**2003 Hyundai  ACCENT L**

| | |
|---|---|
| Bodily Injury Limits: | $10,000/$20,000 |
| Collision Coverage & Deductibles: | $500 |
| Comprehensive Coverage & Deductibles: | $500 |
| Personal Injury Protection - Deductible: | $500 |
| Personal Injury Protection - Limit: | $10,000 |
| Personal Injury Protection Lost Wages Exclusion: | Decline work loss cov. |
| Personal Injury Protection Plan: | Basic |
| PIP Coverage Option: | Named insured & relatives |
| Property Damage Limit: | $10,000 |
| Uninsured/Underinsured Motorist Bodily Injury - Car Stacking: | Unstacked |
| Uninsured/Underinsured Motorist Bodily Injury Limits: | $10,000/$20,000 |

Back to Account Summary

Privacy and Security  Insurance Licenses  Legal Disclaimer  Insurance Ratings  White Mountains Insurance Group

Copyright © 2003 Esurance Inc  All rights reserved

032314

**DEFENDANT, 12-2000 LLC, D/B/A BUCHANAN JENKINS
HYUNDAI OF BRADENTON'S ANSWERS AND OBJECTIONS TO
PLAINTIFF'S SECOND SET OF INTERROGATORIES**

1. State the name, business and home address and position of the person responding hereto on your behalf. State the name, business and home address and position of each and every employee associated with the sale of the vehicle to plaintiff Melissa A Mitchell. State the name business and home address and position of the insurance agent Buchanan-Jenkins arranged to be at the dealership on July 5, 2003, to offer plaintiff Melissa A. Mitchell an insurance policy on the vehicle that is the subject of this suit.

**ANSWER:** Defendant, BUCHANAN JENKINS, objects to paragraph "1" of Plaintiff's Second Set of Interrogatories as Plaintiff is attempting to circumvent the Rules of Civil Procedure by combining several questions into one. Furthermore, Defendant objects as Plaintiff has been allotted 25 interrogatories as provided by Federal Rules of Civil Procedure, plus an additional 10 interrogatories by Order of the Court. Therefore, these Interrogatories exceed the number interrogatories allotted. However, without waiving said objection, Cory Pool, Director of Administration, 1800 SW College Road, Ocala, FL 34471 and Tricia Montanez, Executive Assistant, 1800 SW College Road, Ocala, FL 34471, Ray Buril and Beth McNett, 1800 SW College Road, FL 34471, with the assistance of counsel. Defendant does not arrange for insurance agents to offer policies at the dealership.

2. Explain in full detail why Buchanan-Jenkins requires a



consumer to purchase full-coverage insurance on a vehicle that is spot delivered and whether Buchanan-Jenkins is paid a percentage of any such insurance policy purchased through the agent listed above or any other agent. Explain in full detail why the plaintiff was given as the name and address of Regional Acceptance Corporation as the lien holder for the insurance policy purchased at Buchanan-Jenkins on July 5, 2003. Explain in full detail whether Buchanan-Jenkins profits from the sale of any type of insurance sold to any customer. Explain in full detail why Buchanan-Jenkins issues temporary tags in spot delivery sales if it maintains no title has passed and cite to a Florida Statute or agency rule that allows for temporary tags to be issued in condition precedent spot delivery bailment contracts.

**ANSWER:** Defendant, BUCHANAN JENKINS, objects to paragraph "2" of Plaintiff's Second Set of Interrogatories as Plaintiff is attempting to circumvent the Rules of Civil Procedure by combining several questions into one. Furthermore, Defendant objects as Plaintiff has been allotted 25 interrogatories as provided by Federal Rules of Civil Procedure, plus an additional 10 interrogatories by Order of the Court. Therefore, these Interrogatories exceed the number interrogatories allotted. However, without waiving said objection, full coverage is required by all lenders and the State of Florida requires this as well in order to title the vehicle. BUCHANAN JENKINS, does not receive any compensation from any insurance agency. Regional acceptance was given as the lien holder because Ms. Mitchell stated that her bankruptcy was discharged and based on all information, BUCHANAN

JENKINS reasonably believed that her vehicle purchase would be funded by Regional Acceptance Corporation. Regional Acceptance was given as the lienholder based on information given by Ms. Mitchell. She stated her bankruptcy listed on the credit bureau was discharged and would provide proof thereof, however the information was never provided and per the open bankruptcy the lenders denied the application. Finally, temporary tags are issued pending the transfer of the title because the actual transfer of title is done by the State of Florida. BUCHANAN JENKINS only prepares the paperwork.

3. Explain in full detail why Buchanan-Jenkins uses a bailment contract that looks identical to the forms for Odometer disclosure and pollution control disclosures. Further explain why the bailment contract is attached to or otherwise associated with the odometer disclosure and pollution control disclosure. Explain in full detail why the bailment contract requires a signature above the text while all other forms Buchanan-Jenkins uses requires a signature at the bottom of the page after the text.

ANSWER: Defendant, BUCHANAN JENKINS, objects to paragraph "3" of Plaintiff's Second Set of Interrogatories as Plaintiff is attempting to circumvent the Rules of Civil Procedure by combining several questions into one. Furthermore, Defendant objects as Plaintiff has been allotted 25 interrogatories as provided by Federal Rules of Civil Procedure, plus an additional 10 interrogatories by Order of the Court. Therefore, these Interrogatories exceed the number interrogatories allotted. However, without waiving said objection, the bailment contract is

a standard form that is purchased through Reynolds & Reynolds Corporation. The form is compliant with Florida requirements. As to the reasoning behind the layout of the form, that question would have to be directed to Reynolds & Reynolds Corporation.

4. Explain in full detail the spot Delivery process at Buchanan-Jenkins. Include the minimum credit score required for Buchanan-Jenkins to be able to sell a promissory note in the secondary market to each and every financial company contacted in an attempt to sell the plaintiff's promissory note. State the name, address and contact person information for all financial lending institutions that Buchanan-Jenkins utilizes for consumers with poor credit or bankruptcies. State the plaintiff's credit score as accessed on July 5, 2003 by Buchanan-Jenkins prior to entering into the transaction. State whether Buchanan-Jenkins enters into Bailment contracts with consumers that fall below this minimum credit score. State the disclosure given to consumers regarding the bailment contract in particular describe how the cost of bailment agreement is disclosed.

ANSWER: Defendant, BUCHANAN JENKINS, objects to paragraph "4" of Plaintiff's Second Set of Interrogatories as Plaintiff is attempting to circumvent the Rules of Civil Procedure by combining several questions into one. Additionally, the request is vague and ambiguous Furthermore, Defendant objects as Plaintiff has been allotted 25 interrogatories as provided by Federal Rules of Civil Procedure, plus an additional 10 interrogatories by Order of the Court. Therefore, these Interrogatories exceed the number interrogatories allotted. However, without waiving said objection,

BUCHANAN JENKINS does not have promissory notes nor does it sell promissory notes in the secondary market. However, without waiving said objection, there is no minimum credit score, each deal is looked at individually. Plaintiff's credit score on July 5, 2003, was 396. Relative to institutions who Defendant uses with consumers with poor credit, Defendant does not make any determinations based on a person's credit. However, a list of all institutions will be provided.

STATE OF FLORIDA      )
                      ) ss.
COUNTY OF             )

   Cory Pool _____ _____ , being duly sworn, deposes

and says that the attached are true and correct to the best of his

knowledge, information and belief.

SWORN TO AND SUBSCRIBED
before me this 15 day
of April , 2004.

My commission expires:

NOTARY PUBLIC

Tricia Montanez Ayars
Commission # DD105796
Expires April 4, 2006
Bonded Thru
Atlantic Bonding Co., Inc.

(Print, Type or Stamp Commissioned Name
of Notary Public)

Personally Known ☑ OR Produced Identification ☐

Type of Identification Produced: _____ _____   _____ ____

## VEHICLE DESCRIPTION

CHECK ONE: ☐ Motor Vehicle   ☐ Mobile Home   ☐ Vessel

| Vehicle Identification Number | Year | Make/Model | Color | Body | Title No |
|---|---|---|---|---|---|
| KMHDC35C23U165981 | 2003 | HYUNDAI | SILVER | 3DR HR | |

I hereby name and appoint _____ to be my lawful attorney-in-fact, to act for me in applying for an original or duplicate certificate of title, to record or release a lien, or to register, transfer title to, or otherwise give notice to the motor vehicle, mobile home or vessel described above, and to print my name and sign their name, in my behalf. My attorney-in-fact can also do all things necessary to the application or any other related instrument and to bind me in as sufficient a manner as I myself could do, were I personally present and signing the same. With full power of substitution and revocation, I hereby ratify and confirm whatever my said attorney-in-fact may lawfully do or cause to be done in the virtue hereof.

**NOTICE TO OWNER: COMPLETE THIS FORM IN ITS ENTIRETY PRIOR TO SIGNING.**

Signature of Owner / Co-owner (Grantor) _____

Signature of Owner / Co-owner (Grantor) _____

Driver License Number ___  City ___  State ___  Zip ___

Street Address of Owner / Co-owner (Grantor) _____

(Name of Person Making Statement)

(Print, Type or Stamp Commissioned Name of Notary)

Sworn to (or affirmed) and subscribed before me this ___ day of ___

By: _____

(SEAL)

(Signature of Notary)

Date of Birth ___

Personally Known ___

or Produced Identification ___

Type of Identification Produced ___

Section 328.05, Florida Statutes, and Section 319.33, Florida Statutes, provides that whoever knowingly makes a false statement in any application or affidavit required under the provisions of such Chapter, or in a bill of sale or sworn statement of ownership, or otherwise commit a fraud in any application, is guilty of a felony of the third degree, punishable as provided in s.775.082, 775.083, and 775.084.

If a power of attorney is used and the individual appointed as the attorney-in-fact will be completing the odometer disclosure statement as the buyer only, or the seller only, this non-secure power of attorney form can be used. This form can not be used to allow an individual or entity to sign as both buyer and seller confirming the Federal odometer reading. This may be accomplished only with the secure power of attorney (HSMV 82995) when:

(a) the title is physically being held by the lienholder, or
(b) the title is lost

CAUTION: A seller cannot give a dealer or his employee a non-secure power of attorney (HSMV 82053) and have him or one of his employees sign a federal odometer statement, confirming the mileage for both buyer and seller, as a dealer and his employees are considered a single entity.

HSMV 82053 (Rev. 6/99) S
(MERGED WITH FORM HSMV 87005)

---

## VEHICLE DESCRIPTION

CHECK ONE: ☐ Motor Vehicle   ☐ Mobile Home   ☐ Vessel

| Vehicle Identification Number | Year | Make/Model | Color | Body | Title No |
|---|---|---|---|---|---|
| KMHDC35C23U165981 | 2003 | HYUNDAI | SILVER | 3DR HR | |

THIS AGREEMENT IS ATTACHED TO AND FORMS A PART OF THAT CERTAIN SALES AGREEMENT BETWEEN DEALER LISTED ABOVE AND THE UNDERSIGNED BUYER(S) AND CONCERNS THE VEHICLE LISTED ABOVE. PENDING CREDIT APPROVAL OF BUYER(S) BY LENDING INSTITUTION AND COMPLETION OF SALES TRANSACTION, INCLUDING ALL PAYMENTS TO BE MADE BY BUYER(S) OR ON BUYER(S) BEHALF AND ALL ADJUSTMENTS FOR BALANCES DUE ON TRADE-IN PAYOFFS DELIVERY OF SAID VEHICLE BY DEALER IS HEREBY MADE TO BUYER(S) AS A CONVENIENCE TO BUYER(S), AND IS SUBJECT TO ALL TERMS AND CONDITIONS IN SAID SALES AGREEMENT AND IN THE PROMISSORY NOTE AND SALES AGREEMENT. IF ANY EXECUTED CONCURRENTLY OR IN ACCORDANCE THEREWITH SAID VEHICLE SHALL REMAIN THE PROPERTY OF THE DEALER BUYER(S) REPRESENTS THAT ALL STATEMENTS MADE IN THE LOAN APPLICATION ARE TRUE AND CORRECT, AND DEALER MAKES DELIVERY OF SAID VEHICLE IN RELIANCE UPON THEIR TRUTH AND CORRECTNESS. ANY UNTRUE OR INCORRECT STATEMENT OR ANY OTHER MISREPRESENTATION OF BUYER(S) IN SAID APPLICATION OR IN ANY OTHER AFORESAID DOCUMENTS SHALL ENTITLE DEALER AT HIS DISCRETION, TO IMMEDIATELY RESCIND THE SALE UPON RESCINDING THE SALE, BUYER(S) SHALL PROMPTLY RETURN SAID VEHICLE TO DEALER AT DEALER'S ADDRESS IN GOOD CONDITION. BUYER(S) SHALL BE LIABLE TO DEALER FOR ALL DAMAGE TO, DESTRUCTION TO, ABUSE OF, EXCESSIVE WEAR AND/OR EXCESSIVE MILEAGE AND USE" AS DESCRIBED HEREIN SAID VEHICLE WHILE IN BUYER(S) POSSESSION OF THE BUYER(S) "EXCESSIVE MILEAGE AND USE" AS DESCRIBED HEREIN SHALL BE PRESUMED WHEN THE TOTAL MILES WHICH SAID VEHICLE IS DRIVEN WHILE IN BUYER(S) POSSESSION EXCEEDS AN AVERAGE OF TWENTY (20) MILES FOR EACH DAY IN BUYER(S) POSSESSION. IN THE EVENT THAT THE AVERAGE MILEAGE EXCEEDS THE AFOREMENTIONED TOTAL, THE BUYER(S) IS/ARE RESPONSIBLE TO PAY UPON DEMAND, AT A RATE OF TWENTY (20) CENTS PER MILE, TO THE DEALER, FOR EVERY MILE EXCEEDING AVERAGE DAILY USE. THIS SUM SHALL BE ADDED TO ANY AMOUNTS OWED FOR DAMAGE, DESTRUCTION OR ABUSE. ALL FUNDS ON DEPOSIT WITH DEALER SHALL BE APPLIED TO MONIES DUE DEALER AND THE BALANCE MAY, AT DEALER'S DISCRETION, BE HELD BY DEALER FOR DAMAGES IF SAID SUMS ARE INSUFFICIENT, DEALER MAY PROCEED AGAINST THE BUYER(S) BY OTHER LEGAL REMEDIES TO FULLY RECOVER LOSSES. IF DEALER IS ABLE TO PROVIDE BUYER(S) WITH FINANCING ACCORDING TO THE TERMS OF THE SALES AGREEMENT, SAID AGREEMENT SHALL BE BINDING UPON BUYER(S) AND ENFORCEABLE BY DEALER.

DEALER _____

X _____
BUYER(S) SIGNATURE

X _____
BUYER(S) SIGNATURE

_____
BUYER(S) PRINTED NAME

_____
BUYER(S) PRINTED NAME

LAW FORM NO. 7001-02-FL (REV. 09/02) © 2002 Reynolds and Reynolds Order Toll Free 1-800-344-0996 Fax 1-800-531-0055

7/7/2003 11:55 AM  FROM: Fax   TO: 19417441160   PAGE: 001 OF 001



Affiliated Financial Corporation
4651 Sheridan Street, Suite 100
Hollywood, FL 33021
Phone:(954) 893-0400
Fax:(888) 881-9879

F A X * N O T I F I C A T I O N

| | | | |
|---|---|---|---|
| Dealer Name: | BUCHANAN JENKINS HYU | Dec. Date: | 07/07/2003 |
| Dealer Phone/Fax: | 19417479262/ 19417441160 | Dec. Time: | 11:55 |
| Dealer Contact: | ROY BARIL | Brch: | |
| Underwriter: | Lance | Applicant#: | 129961 |
| Buyer: | MELISSA MITCHELL | SSN: | 267554651 |
| Co-Buyer: | | SSN: | |

D E C L I N E D

EX:J-1

rix Financial    7/7/2003 9:45   PAGE   1/1   RightFax

)                                              )

# Centrix Financial, LLC

6782 South Potomac Street                    Toll Free Phone (866) 707-0712
Centennial, CO 80112-3915                    Toll Free Fax (866) 473-9150

## July 07, 2003

## LOAN DECLINED

### Non-Rehashable

Dealer:    Buchanan Jenkins Auto Mall
Loan Applicant.    MELISSA MITCHELL

Finance Mgr.:    Ray Baril                    Loan #:    734657

We are unable to approve this deal at this time due to the following:
        INSUFFICIENT POSITIVE CREDIT

Additional Notes:

Loan Officer:    Centrix Financial

EX: J-2

1(941)744-1160            )                    )    APP #:  31002758

HOUSEHOLD

# DECLINED

Dealership:     BUCHANAN JENKINS HYUNDAI

Attention:      RAY

The application which you submitted for the applicant(s) listed below has been declined.

Applicant:      MITCHELL, MELISSA
Co-Applicant:

We appreciate your having considered *HAFC* regarding this potential financing.  We regret that we were not able to be of service on this transaction, but we do value your business and look forward to working with you on future applications.

Comments:    SORRY, UNABLE TO HELP, APPLICANT HAS A
REPOSSESSION IN THE PAST YEAR.

EX: J-3

Date/Time:   7/07/03      8:49 PST

SOUTHEASTERN CREDIT CTR
800-986-9159      800-986-9160 FAX

tFAX          7/7/03 12:45  PAGE  1/1   Nafco (   )4) 996-1546



**TURNDOWN NOTIFICATION**

Credit Analyst: Ric Cree
Phone Number: (800) 856-6190 Ext. 31215
Fax Number:    (800) 856-6192
DATE: 7/7/03 12:43 PM

| | | | | |
|---|---|---|---|---|
| Primary: | Melissa Mitchell | | Application #: | 2899475 |
| Secondary: | | | Dealership: | Buchanan Jenkins Hyundai Of Bradenton |
| Attention: | Special F & I Manager | | | |

### REASONS FOR DECLINATION OF CREDIT

    Does not meet our minimum credit criteria.
    Other

**Other declination reasons and comments:**

no reaffirmed or reestablished qualifying credit after the bk

    If I can be of further assistance on this deal, please contact me at this phone number listed above.

EX: J-5

# Nicholas Financial, Inc.
## Call-Back Sheet

To: *Buchanan Jenkins*

Attn: *Ray*

Customer: *M. Mitchell*

Date: *7,8,03*

Line 3 Approval: _____  Discount: _____

# Pmts: _____  Pmt Amt: _____  Rate: _____  Check To Dealer: _____

Vehicle: Year: _____  Make: _____  Model: _____

Add On Products: Yes: _____  No: _____  Max. Amt: _____

☐ Conditioned To: _____

☒ Declined: Sorry, but this application has been DENIED because it doesn't meet our program requirements. Nicholas Financial, Inc. does appreciate you giving us the opportunity to earn your business. We will always strive to make our relationship with you positive!

Nicholas Financial, Inc.
Northgate Commons Center
1931 Northgate Boulevard
Sarasota, FL 34234
Phone:   (941) 360-8510
Fax:     (941) 360-8530

EX: J-6

# REGIONAL
an affiliate of BB&T

## DEALER CALL BACK SHEET

Date:  July 07, 2003          Time:  11:49 AM   Application Number: 1224038

To:   BUCHANAN/JENKINS HYUNDAI – RAY BARIL
From:  John Cellura          Phone #: (813) 908–6842

Request for:    Applicant   : MELISSA  MITCHELL
                Co-Applicant :

Collateral :   2003 HYUNDIA ACCENT   0

Credit Decision: Decline

Comments    :


Advance    :     $0.00
Holdback   :     $0.00  Term :  0  Approved Rate : 0.000%
Processing Fee:     $0.00
Cash Down Payment Required (in addition to trade, if any) :

RAC Add on Products: No
Life:   $0.00  A&H :    $0.00  IUI :    $0.00  Warranty :    $0.00  GAP :    $0.00

Documents Required to Fund the Contract:

Other Requirements for Funding:

Reasons for Condition or Denial:
DELINQUENT PAST OR PRESENT CREDIT OBLIGATIONS WITH OTHERS
- A Minimum down payment of the lesser of 10% of true trade equity (ACV) and/or $1000 cash.
- First time Buyers require a minimum of 20% true down payment.
- All due dates must be between the 1st and the 20th of the month.
- All information on application must verify at funding

THIS  CALL  BACK  IS  GOOD  FOR  20  DAYS  FROM  THE  ABOVE  DATE.
Regional thanks you for giving us the opportunity to earn your business.

EX: J-7

 **Nicholas Financial Inc.**

2454 McMullen Booth Road
Building C - Suite 501B
Clearwater, Florida 34619
Telephone (813) 726-0398
Facsimile (813) 726-2140

## Automobile Dealer Retail Purchase Agreement

The undersigned Dealer proposes to sell to the undersigned Nicholas Financial, Inc. (NFI), from time to time, Promissory Notes, Security Agreements, Retail Installment Contracts, Conditional Sales Contracts, or other instruments hereinafter referred to as "Contracts", evidencing installment payment obligations owing Dealer arising from the time sale of motor vehicle(s) and secured by such Contracts. It is understood that NFI shall have the sole discretion to determine which Contracts it will purchase from Dealer.

1. Dealer represents and warrants that Contracts submitted to NFI for purchase shall represent valid, bonafide sales for the respective amount therein set forth in such Contracts and that such Contracts represent sales of motor vehicles owned by the Dealer and are free and clear of all liens and encumbrances.

2. Upon purchase by NFI of any contracts hereunder from dealer, dealer shall endorse and assign to NFI the obligations and all pertinent security, security instruments, along with such provisional endorsements as may be stipulated for such contracts purchased by NFI.

3. This Agreement, and sums payable hereunder, may not be assigned by Dealer without written consent of NFI.

4. Dealer acknowledges that NFI requests Dealer Reserves and a $75.00 processing charge which are taken from Dealer Proceeds and are Non-Refundable. The amount is disclosed on each transaction and is set by Nicholas Financial, Inc.

5. In accordance with the Equal Credit Opportunity Act, we agree to report in a timely manner to credit applicants, credit acceptance or denial as specified in Regulation "B" of the Act. Our dealership assumes all responsibility in adhering to the regulations contained in the Act. We also understand that Nicholas Financial, Inc. will answer questions as to why a contract was not approved for purchase, should the purchase of the contract be denied. Our dealership agrees to inform the credit applicant in accordance with Regulation "B" of the Equal Credit Opportunity Act of any adverse action or credit denial via correspondence through our dealership.

6. No Provisions hereof may be modified, changed or supplemented, except in writing by a duly authorized representative of Nicholas Financial, Inc.

Nicholas Financial Incorporated

By: _____

Date: _____

Dealer   *Buchanan Jenkins Hyundai of Bradenton*

By: *Teresa Vullo*

Date: *4/5/01*

EX: K

032314

## DEFENDANT, 12-2000 LLC, D/B/A BUCHANAN JENKINS HYUNDAI OF BRADENTON'S ANSWERS AND OBJECTIONS TO INTERROGATORIES

1.     State the name, business and home address, and position of the person responding hereto on your behalf.

**ANSWER:** Cory Pool, Director of Administration, 1800 SW College Road, Ocala, FL 34471 and Tricia Montanez, Executive Assistant, 1800 SW College Road, Ocala, FL 34471, with the assistance of counsel.

2.     Please list in detail each and every communication between a 12-2000 LLC, ("hereinafter Buchanan Jenkins") employee and Melissa Mitchell.

**ANSWER:** The Defendant, BUCHANAN JENKINS, objects to paragraph "2" of the Plaintiff's First Set of Interrogatories as it is overbroad and overly burdensome. However, without waiving said objection, Plaintiff had communications with Roger Riffle, George Kasloski and Raul Gomila.

3.     For the calendar years 2001, 2002, and 2003 state for each the number of credit applications which were received by you, either as an arranger of credit or as an anticipated extender of credit, regardless of whether said applications were ultimately approved or not.

-1-



**ANSWER:** The Defendant, BUCHANAN JENKINS, objects to paragraph "3" of the Plaintiff's First Set of Interrogatories as it is overly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. However, without waiving said objection, as Defendant does not extend credit there would be none. As to instances wherein Defendant allegedly arranged for extensions of credit, Defendant disputes that it is an "arranger for extension of credit" but that assuming arguendo it was, the number of such applications cannot be determined at this time, though records are kept in a new storage facility in Bradenton, Florida. Defendant further objects to disclosure of this information as it may violate the privacy rights of the applicants.

4.    State the date on which you began doing business in Bradenton, Florida as alleged in the Complaint herein, the date on which you began operating from your present location in Bradenton, Florida, and state the locations and the name under which you did business for operations in Bradenton, Florida, other than your present one.

**ANSWER:** The Defendant, BUCHANAN JENKINS, began doing business . Bradenton, Florida, on March 27, 2001, under the name of 12-200LLC DBA Buchanan Jenkins Hyundai of Bradenton.

5.    For the period beginning in 2001 and continuing until the

-2-

present, state the procedure maintained by you to process credit applications received by you, whether as an arranger of credit or an anticipated extender of credit, detailing step by step the process used by you from its beginning to final conclusion; state whether, during the referenced period of time, these procedures have been changed, and if so, state the date on which the change occurred, the nature of the change, and the reason for the change.

**ANSWER:** Defendant, BUCHANAN JENKINS, objects to its characterization as an arranger or extender of credit as defined by Federal law. However, without waving said objection, for the time period of 2001 and 2002, when customers sought financing for the purchase of a vehicle, they were asked to complete credit applications. A copy of the person's credit history was obtained via authorization and then submitted to various finance companies (creditors) for approval and extension of credit. As of 2003, customers were asked to sign privacy notices as well as a credit applications.

6. State whether, regarding the credit applications which you receive, you attempt to provide to the applicants on whose credit applications adverse action is taken the written notification described in § 202.9(a)(2) of Regulation B; if not, describe in detail and particularly the reason(s) therefore; if so

-3-

state what procedures you maintain to ensure that such a notification is so provided, and describe in detail the contents thereof, or attach a copy thereof hereto.

**ANSWER:** Adverse action notifications are not provided by Defendant, BUCHANAN JENKINS, as they do not take adverse action against the customers and Federal law does not impose such duty.

7.   For the period beginning two years prior to the filing of the Complaint herein and continuing until thirty days prior to the filing of the Complaint herein, state the names and addresses of all persons who have made credit applications wherein Defendant Buchanan Jenkins has been the arranger of credit and Hyundai Motor Finance, Regional Acceptance, Centrix Financial, Affiliated Financial, Household Automotive, Nicholas Financial Corp., Southern Automotive, Buchanan-Jenkins the anticipated extender of credit, and adverse action has been taken in response to those applications.

ANSWER: The Defendant, BUCHANAN JENKINS, objects to paragraph "7" of the Plaintiff's First Set of Interrogatories as it is overbroad, overly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this request violates the privacy rights of non-parties, for which the Defendant could become liable if this information is disclosed. See also the

-4-

objection for #3.

8.  State the names and addresses of all persons who, from thirty days prior to the filing of the Complaint herein, have made credit applications wherein Defendant Buchanan Jenkins has been the arranger of credit and Hyundai Motor Finance, Regional Acceptance, Centrix Financial, Affiliated Financial, Household Automotive, Nicholas Financial Corp., Southern Automotive, Buchanan-Jenkins the anticipated extender of credit, and adverse action has been taken in response to those applications.

**ANSWER:** The Defendant, BUCHANAN JENKINS, objects to paragraph "8" of the Plaintiff's First Set of Interrogatories as it is overbroad, overly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this request violates the privacy rights of non-parties. Also see answer/objection to #3 and #7.

9.  For the persons identified in your answers to the previous two interrogatories, state whether you have retained a copy of the credit applications of those persons, the notification of action taken, and/or the statement of specific reasons for adverse action, and if so state the location of all such records, and the name, address, and position of the custodian thereof; regarding all such persons, state whether you retain any other

-5-

records regarding them, and if so, identify the nature of those records and the custodian thereof. Regarding all such records, state whether you consent to the inspection and/or copying thereof by undersigned counsel at a time and place of mutual convenience; if not, state the reason(s) therefore, and if so, state the time(s) within two weeks of your filing your Answers hereto and the place within the Bradenton, Florida environs that you would consent to such inspection and/or copying.

ANSWER: The Defendant, BUCHANAN JENKINS, objects to paragraph "9" of the Plaintiff's First Set of Interrogatories as it is overbroad, overly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this request violates the privacy rights of non-parties. However, without waiving said objection, all credit applications are retained in the deal folders and filed. Defendant will not agree to the copying of any files in part or whole as it would be a violation of Defendant's privacy policy as well as the privacy rights of non-parties, absent a court order.

10. State the time, date, and place of any contact between you or an agent, employee or representative of you and the named Plaintiff in this case, Melissa Mitchell, the name, address and position of each such agent, employee, or representative acting on

-6-

your behalf, the nature of the contact, the occasion for the contact and the contents of any conversation or remarks made during the contact; state whether there exists any record relevant or related to any such contact, and if so, state with detail and particularity the contents of the record, and the name and address of the custodian thereof, or attach a copy of all such records hereto.

**ANSWER:** The Defendant, BUCHANAN JENKINS, objects to paragraph "10" of the Plaintiff's First Set of Interrogatories as it is ambiguous, overbroad, and overly burdensome. However, without waiving said objection, there are no records as to any communication with the Plaintiff (Please see Defendant's answer to paragraph "2"). Furthermore, conversations were held with the Plaintiff on July 5, 2003, and July 7, 2003, through July 11, 2003.

11.) Regarding each allegation of the Complaint herein for which you provided in your answer any response other than an unequivocal admission, state the basis on which you failed to so admit it and the steps taken by you by way of inquiry and/or investigation to confirm the truth thereof and the results of such inquiry or investigation.

**ANSWER:** The Defendant, BUCHANAN JENKINS, objects to paragraph "11" of Plaintiff's First Set of Interrogatories as it fails to put

-7-

)                                    )

Defendant on notice as to what is being asked.  Nothing in this particular form of discovery asked for "admission" and Defendant believes no answers were equivocal.

12.  State what day the defendant accessed the Plaintiff's credit report and for what purpose did the defendant access the credit report and who requested the credit report.

**ANSWER:** Defendant, BUCHANAN JENKINS, requested a copy of the Plaintiff's credit report on July 5, 2003, as such report must be attached along with a completed credit application and provided to the finance companies for consideration of an extension of credit.

13.  Regarding credit reports, state the source, name, address and where the database is located.

**ANSWER:** The Defendant, BUCHANAN JENKINS, objects to paragraph "13" of the Plaintiff's First Set of Interrogatories as it is vague and ambiguous.  However, without waiving said objection, the Defendant is unsure as to what information Plaintiff is seeking.

14.  State the manner for example, telephone, fax, via the Internet, or mail that credit reports are acquired by Buchanan Jenkins and provide such numbers or addresses.

**ANSWER:** The Defendant, BUCHANAN JENKINS, obtains its credit reports via the internet, through websites such as Equifax.

15.  State whether credit reports are regularly and routinely

accessed before Buchanan Jenkins enters into a Bailment for spot delivery.

ANSWER: Yes, in the normal course of doing business for <u>all</u> transactions.

16. State whether Buchanan Jenkins has any dealer agreements with financial institutions regarding claims or defenses to the Equal Credit Opportunity Act and if so, give their names, and addresses.

ANSWER: Not to our knowledge or understanding.

17. Relating to the previous question are there any agreements between Buchanan Jenkins and financial institutions where Buchanan Jenkins agrees to provide the adverse notification requirement under the Equal Credit Opportunity Act, and if so, please outline the procedures Buchanan Jenkins follows to comply with the Equal Credit Opportunity Act and who created the procedures and at what date and time the procedures were created.

ANSWER: No agreements exist between Defendant, Buchanan Jenkins, and any financial institutions where Defendant agrees to provide the adverse notification.

18. Regarding each affirmative defense stated in your answer, state with detail and particularity the factual basis therefore and all evidence known to you or any person acting on your behalf,

which supports each, such defense.

ANSWER: As outlines in Defendant's Motion for Summary Judgement, Defendant is not responsible for notifying Plaintiff of a third-party's denial of her credit. Furthermore, Defendant does not extend credit, therefore they did not participate in the credit decision. Lastly, as Plaintiff acknowledges within her Complaint, third-parties were responsible for the financing.

19. State whether Buchanan Jenkins regularly extends, renews or continues credit.

ANSWER: The Defendant, BUCHANAN JENKINS, does not extends, renews or continues credit.

20. State whether Buchanan Jenkins regularly sets the terms of credit in respect to the Retail Installment Sales Contract and does Buchanan Jenkins fill out the risk and does Buchanan Jenkins intent to sell the risk or only profit from the vehicle.

ANSWER: The Defendant, BUCHANAN JENKINS, is unsure as to whether the Plaintiff is referring to RISC instead of "risk" in paragraph "20" of Plaintiff's First Set of Interrogatories. However, the Defendant does not set the terms of credit as they do not extend credit.

21. State whether Buchanan Jenkins regularly list itself as a creditor.

-10-

**ANSWER:** The Defendant, BUCHANAN JENKINS, objects to paragraph "21" of the Plaintiff's First Set of Interrogatories as it does not identify where or how Defendant lists itself and as a creditor is vague and ambiguous. The Defendant is the seller of the vehicles.

STATE OF FLORIDA        )
                        ) ss.
COUNTY OF Marion        )

___ Cory Pool ___                    , being duly sworn, deposes

and says that the attached are true and correct to the best of his

knowledge, information and belief.

Cory Pool

SWORN TO AND SUBSCRIBED
before me this 7 day
of April       , 2004.

My commission expires:

Tricia Montanez Ayers
Commission # DD105796
Expires April 4, 2006
Bonded Thru
Atlantic Bonding Co., Inc.

NOTARY PUBLIC

(Print, Type or Stamp Commissioned Name
of Notary Public)

Personally Known ✓ OR Produced Identification □

Type of Identification Produced: ___ ___ ___        ___ ___ ___

032314                 UNITED STATES DISTRICT COURT
                        MIDDLE DISTRICT OF FLORIDA
                            TAMPA DIVISION

                     CASE NO. 8:03-CV-1598-T23EAJ

                     JUDGE: Steven D. Merryday

MELISSA A. MITCHELL,

      Plaintiff,

v.

12-2000 LLC, d/b/a BUCHANAN
JENKINS HYUNDAI OF BRADENTON,

      Defendant.
                                   /

          **DEFENDANT'S ANSWERS TO PLAINTIFF'S SECOND
                   REQUEST FOR ADMISSIONS**

      COMES NOW Defendant, 12-2000 LLC, d/b/a BUCHANAN JENKINS

HYUNDAI OF BRADENTON (hereinafter "BUCHANAN JENKINS"), by and

through its undersigned counsel and hereby files its Answers to

Plaintiff's Second Request for Admissions, and states as follows:

      1. Admit that on July 8, 2003, Buchanan-Jenkins withdrew

electronically from Kurt D. Mitchell's bank account $1460.00 after

Buchanan-Jenkins was unable to sell the promissory note on July 7

2003, after contacting at least 7 Financial institutions.

      **ANSWER:** The Defendant, BUCHANAN JENKINS, denies paragraph "1"

of Plaintiff's Second Request for Admissions and strict proof is

demanded thereon.

      2. Admit that on July 5, 2003, Buchanan-Jenkins supplied

Regional Credit Acceptance Corp. as the lien holder to Melissa A.

Mitchell to be listed on the insurance policy purchased on July 5,

EX: M

CASE NO. 8:03-CV-1598-T23EAJ

2003, by Melissa A Mitchell.

**ANSWER:** The Defendant, BUCHANAN JENKINS, admits paragraph "2" of the Plaintiff's Second Request for Admissions.

3. Admit that when Buchanan-Jenkins requires a consumer to purchase insurance coverage in connection with a spot delivery it never lists itself as the lien holder in said insurance policy.

**ANSWER:** The Defendant, BUCHANAN JENKINS, admits paragraph "3" of the Plaintiff's Second Request for Admissions as it does not extend credit and would not be considered a lien holder. As to requiring insurance, the State of Florida requires all vehicles to be insured.

4. Admit that Buchanan-Jenkins was not properly licensed under Ch. 520 during the period of time this transaction occurred and therefore was operating illegally.

**ANSWER:** Defendant, BUCHANAN JENKINS, objects to paragraph "4" of Plaintiff's Second Request for Admissions as it calls for a legal conclusion, is irrelevant, and seeks information which is not reasonably calculated to lead to the discovery of admissible evidence. However, without waiving said objection, Defendant admits that Buchanan-Jenkins was not licensed under Ch. 520 during the period of time this transaction occurred.

5. Admit that Buchanan-Jenkins often enters into bailment

-2-

CASE NO. 8:03-CV-1598-T23EAJ

contracts with consumers it knows fall below the minimum required credit score required to sell the promissory note in the secondary market.

**ANSWER:** The Defendant, BUCHANAN JENKINS, denies paragraph "5" of Plaintiff's Second Request for Admissions and strict proof is demanded thereon.

6. Admit that the money it withholds from consumer's down-payments in the transaction referenced in parapgraph 5 forms a revenue stream for Buchanan-Jenkins and the owners of said corporation.

**ANSWER:** The Defendant, BUCHANAN JENKINS, denies paragraph "6" of Plaintiff's Second Request for Admissions and strict proof is demanded thereon.

7. Admit that Buchanan-Jenkins mails the temporary tag information to the State of Florida.

**ANSWER:** The Defendant, BUCHANAN JENKINS, denies paragraph "7" of Plaintiff's Second Request for Admissions and strict proof is demanded thereon.

8. Admit that Buchanan-Jenkins obtains consumer credit reports from a reporting agency outside the State of Florida via internet, phone or facsimile.

)                              )

CASE NO. 8:03-CV-1598-T23EAJ

**ANSWER:** The Defendant, BUCHANAN JENKINS, after reasonable injuries and diligent search, cannot admit or deny paragraph "8" of Plaintiff's Second Request for Admissions as Defendant obtains credit reports via internet it is without knowledge as to where the agencies are located.

9. Any request not specifically admitted is hereby denied.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this ___ day of April, 2004, to: Todd R. Perkins, Esquire, 1001 Third Avenue West, Suite 480, Bradenton, FL 34205 and William J. Denius, Esquire, Kilgore, Pearlman, Stamp, Ornstein & Squires, P.A., Two South Orange Avenue, Orlando, FL 32801.

CONROY, SIMBERG, GANON,
KREVANS & ABEL, P.A.
Two South Orange Avenue
Suite 300
Orlando, FL 32801
(407) 649-9797

BY:
John L. Morrow, Esq.
Florida Bar No.: 656038

KMC/ec

-4-